IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NEW YORK
BROOKLYN DIVISION

REPLY ALL CORP.,

    Plaintiff,

v.

GIMLET MEDIA, INC.

    Defendant.

Civil Action No. 1:15-CV-04950-WFK-MDG

**GIMLET MEDIA, INC.'S COMBINED OPPOSITION TO REPLY ALL CORP.'S
MOTION TO COMPEL, AND CROSS MOTION TO COMPEL AND FOR SANCTIONS**

**I.    Plaintiff's Counsel Intentionally Violated the Protective Order
and Now Demands That Gimlet Media Produce Additional Highly
Sensitive Documents, While Exhibiting Every Intention to Repeat the Violation.**

Plaintiff's counsel knowingly and willfully violated the Protective Order in this case by disclosing Gimlet Media's highly sensitive financial statements to Plaintiff's CEO. While there simply is no excuse for such an egregious violation, Plaintiff's counsel offered numerous justifications, most startlingly:

> *I take issue with the designation of "Confidential-Attorney's Eyes Only" to these documents. Nothing therein is a trade secret nor of a highly sensitive commercial or personal nature.[1]*

Not only did the Court supplement the Parties' proposed Protective Order to explicitly identify "financial information" as being entitled to protection under confidentiality designations,[2] but Plaintiff's counsel also never challenged Gimlet Media's designation until after Defendant raised

---

[1] Exh. A, Plaintiff's August 17, 2016 Letter to Gimlet Media at 2.
[2] D.I. 20, Order on Motion for Protective Order, at 1 ¶ 2.

1

the issue of the violation.[3]  Additionally, despite the Protective Order having already been granted, Plaintiff's counsel objected to producing Plaintiff's financial statements on the grounds "it seeks confidential and/or proprietary information, and/or information that constitutes trade secrets of Plaintiff, specifically, Plaintiff's financial information. . . . it would not be proper to divulge such information in this response *without assurances that such information would be limited to Defendant's Attorney's Eyes Only*."[4]  Plaintiff's counsel thus contends that while his own client's financial statements are entitled to confidentiality, Gimlet Media's are not.

Plaintiff's counsel offered several additional bizarre justifications for his intentional violation, including the following:

> ***Gimlet Media's President contacted Plaintiff's CEO personally to discuss settlement, which "required disclosure" of Gimlet Media's financial statements.***

Plaintiff's counsel alleges that an August 8, 2016 telephone conversation between Gimlet Media President Matt Lieber and Plaintiff's CEO Zach Abramowitz prompted a call between Plaintiff's counsel and Mr. Abramowitz during which the violation occurred, stating:

> During the call, Mr. Lieber pressed Mr. Abramowitz on providing a reasonable settlement demand, asking for legal justification for his position (despite Mr. Abramowitz clearly not acting pro se in the pending matter).  Additionally, Mr. Lieber suggested to Mr. Abramowitz that Gimlet Media is not profitable and alluded to financial documents provided to this firm.  Based on Mr. Lieber's clear indication that Mr. Abramowitz needed foundation for a reasonable demand, Mr. Abramowitz and I engaged in a short telephone conversation wherein I provided such justification, which included a variety of elements as foundation, including use of the financial documents as a basis.[5]

Counsel's statement, however, is inconsistent with Mr. Lieber's declaration.  Mr. Lieber (who is not an attorney) confirmed that Mr. Abramowitz disclosed during their telephone conference that

---

[3] *See* Exh. H, Gimlet Media's August 16, 2016 Letter Notifying Plaintiff of Protective Order Violation.
[4] Exh. B, Plaintiff's Suppl. Responses and Objections to Defendant's First Set of Interrogatories, Nos. 23–24 (emphasis added).
[5] Exh. A, Plaintiff's August 17, 2016 Letter to Gimlet Media, at 2.

*he had already viewed Gimlet Media's financial statements*, and he disclosed details of those statements to Mr. Lieber corroborating the same.[6]  Mr. Lieber and Mr. Abramowitz spoke only once by telephone the morning of August 8, and there was no pause in the call during which Mr. Abramowitz could have conducted the alleged call with Plaintiff's counsel.[7]

Nevertheless, in Plaintiff's August 17, 2016 letter to Gimlet Media, Plaintiff's counsel argued:

> Perhaps most importantly is the fact that ***your own client <u>required disclosure</u> of the contents, thereby relinquishing any claim you may have against this firm***.  I should note that this firm does not take threats of sanctions lightly and will vigorously oppose any motion you file or any improper notice you send to the Court. . . .  ***If you wish to point the blame on anyone, you should begin with your own client.***  Should you improperly file anything with the Court placing blame on this firm, then we will make sure to advise the Court of your own client's acts and seek fees and costs related to defending against your baseless filing(s). No harm has been caused to your client, and I strongly suggest you consider the consequences of filing a frivolous motion based on the above.[8]

Gimlet Media obviously is not responsible for Plaintiff's counsel's intentional violation of the Protective Order and, contrary to Plaintiff's contention, would be remiss in not bringing to the Court's attention such a serious violation, particularly in view of Plaintiff's counsel's defiant statements on the matter.

> ***Gimlet Media's "Confidential-Attorney's Eyes Only" designation is not "prominent" enough.***

On July 26, 2016, in accordance with customary U.S. federal litigation practice, and pursuant to the Parties' Protective Order, Gimlet Media produced to Plaintiff its financial

---

[6] *See* Declaration of Matthew Lieber in Support of Gimlet Media's Combined Opposition to Reply All Corp.'s Motion to Compel, and Cross Motion to Compel and for Sanctions ("Lieber Decl.") ¶ 5.  In view of the four-day period set by the Court to respond to Plaintiff's Motion, Gimlet Media was not able to obtain Mr. Lieber's signature in time for filing, since he is on vacation without internet access.  Gimlet Media will file the declaration upon his return early next week.
[7] *See* Lieber Decl. ¶ 6.
[8] Exh. A, Pl.'s August 17, 2016 Letter to Gimlet Media, at 2–3 (emphasis added).

statements bearing Bates stamps on each page that included the phrase "*Confidential – Attorney's Eyes Only*."[9] Additionally, out of an abundance of caution, due to the highly sensitive nature of the subject information, Gimlet Media named the digital production files "GM00101–GM00102 – *Confidential AEO*" and "GM00103 – *Confidential AEO*."[10] And finally, Gimlet Media stated in its cover letter to Plaintiff's counsel: "Enclosed are copies of Gimlet Media's production documents bearing Bates numbers GM00101–03. *Note that these documents are marked 'Confidential – Attorney's Eyes Only' pursuant to the parties' Protective Order in this matter*."[11] Gimlet Media thus denoted its confidentiality designation *in three different places*.

In any event, Plaintiff's counsel does not even contend he was not aware of the designations—to the contrary, he acknowledged such awareness in the opening of his July 28 demand letter to Gimlet Media.[12] Yet, Plaintiff now curiously contends the "documents provided by Gimlet fail in this instance" to comply with the language of the Parties' Protective Order, which states that "[a]t the time of copying for the receiving parties, such appropriate documents shall be stamped prominently 'Confidential' or 'Confidential-Attorneys' Eyes Only' by the Producing Party."[13] Plaintiff's counsel continues, "there is no watermark indicating 'Confidential-Attorneys' Eyes Only.' Instead, there is a small line in the footer of the

---

[9] Exh. C, Gimlet Media's Production Documents GM00101–03 (redacted) (emphasis added).
[10] Exh. D, Gimlet Media's July 26, 2016 Email to Plaintiff Attaching Gimlet Media's Production (emphasis added).
[11] Exh. E, Gimlet Media's July 26, 2016 Letter to Heitner Enclosing Production (emphasis added).
[12] See Exh. F, Plaintiff's July 28, 2016 Letter to Gimlet Media.
[13] Exh. A, Plaintiff's August 17, 2016 Letter to Gimlet Media, at 2.

documents, which is certainly not considered a 'prominent stamp.'" Plaintiff's argument is plainly irrelevant.[14]

> ***Gimlet Media's financial documents do not fall within the date range for which the Parties agreed to preserve documents, thus the Protective Order does not apply.***

Perhaps most bizarrely, Plaintiff's counsel appears to argue that since Gimlet Media's financial documents do not fall within the date range for which the Parties agreed to preserve documents, the Protective Order somehow does not apply:

> The Motion itself states, "Only relevant documents and things created or received between July 1, 2012 and August 24, 2015 will be preserved." The financial documents provided by Gimlet do not fall within the scope of that statement.[15]

Gimlet Media is puzzled by this statement, since the date range for purposes of document preservation is wholly irrelevant to the confidentiality designation of Gimlet Media's financial statements.

### The Parties' Protective Order Details the Requirements for Confidentiality Designations and the Procedure Governing Disputes Regarding the Same.

On November 19, 2015, the Court granted the Parties' Motion for Protective Order.[16] The Protective Order provides for confidentiality designations for parties' highly sensitive financial information:

> The parties may designate documents and information as "Confidential Information" under paragraph 2 only if the document is entitled to confidential treatment under applicable legal principles, such as private personal, medical or financial information . . ."[17]

The Order further details the procedure governing disputes regarding confidentiality designations:

---

[14] *Id.*
[15] Exh. A, Plaintiff's August 17, 2016 Letter to Gimlet Media, at 2.
[16] *See* D.I. 20, 20-1, Order on Motion for Protective Order.
[17] D.I. 20, Order on Motion for Protective Order, at 1 ¶ 2.

5

> The following procedures shall govern any disputes as to confidentiality designations.  If a party reasonably believes that information should not be designated as "Confidential" or "Confidential–Attorneys' Eyes Only," it must specify to the Producing Party in writing (a) the information in issue, and (b) its grounds for questioning the confidentiality designation.  The Producing Party must respond in writing within ten (10) days, or within such additional time as is reasonable (taking into account the number of documents or other information in issue) and is agreed to by counsel or as ordered by the Court.  If the party challenging the confidentiality designation is still not satisfied, it may move the Court to lift the confidentiality designation. Until the Court rules, the confidentiality designation shall remain in effect.[18]

The Parties agreed to a detailed procedure governing disputes as to confidentiality designations—a procedure that includes the express notice: "Until the Court rules, the confidentiality designation shall remain in effect."[19]  Plaintiff's counsel nevertheless ignored that procedure, and violated the Order by sharing with his client Gimlet Media's highly sensitive financial information.  Plaintiff's counsel now audaciously demands that Gimlet Media be compelled to turn over additional financial statements, even while arguing that he has every right to repeat the violation.  Gimlet Media cannot risk producing the requested documents without assurance from Plaintiff's counsel that he will comply with the Court's Order.

## **Plaintiff Failed to Meet and Confer Before Filing Its Motion.**

Plaintiff failed its duty to properly meet and confer with Gimlet Media in accordance with Local Civil Rule 37.3(a) before filing its motion to compel.[20]  Indeed, other than its July 28, 2016 letter, Plaintiff did not address the alleged discovery deficiency[21] with Gimlet Media, or

---

[18] D.I. 20-1, Order on Motion for Protective Order ¶ 12.
[19] *Id.*
[20] Prior to seeking judicial resolution of a discovery or non-dispositive pretrial dispute, the attorneys for the affected parties or non-party witness shall attempt to confer in good faith in person or by telephone in an effort to resolve the dispute, in conformity with Fed. R. Civ. P. 37(a)(1).  L. Civ. R. 37.3(a).
[21] Plaintiff's counsel waited five (5) months after Gimlet Media served its discovery responses—until the eve of the original close of discovery—to raise any alleged deficiencies.

6

seek Gimlet Media's consent to file the Motion to Compel. Plaintiff nevertheless attached to its Motion a certification that it had done so.[22]

Plaintiff's counsel did not leave for his vacation until August 4—one week after sending the demand letter—yet argues "a telephonic conference was improbable" because he was "at sea."[23, 24] Despite being "at sea," on August 12, Plaintiff's counsel responded to an email from Gimlet Media, but made no mention of the alleged deficiencies of Defendant's financial statements, or of Plaintiff's plan to file the motion three days later—on the Monday morning of his return from being "at sea." Despite having made no effort to meet and confer on the matter, Plaintiff's counsel proceeded to waste the Court's and the parties' resources by filing the subject motion to compel, claiming he filed the motion because he "found it necessary to move as expeditiously as possible."[25]

If Plaintiff had complied with its duty to meet and confer on this issue, Gimlet Media would have notified Plaintiff that Gimlet Media was willing to produce the requested documents, so long as Plaintiff's counsel addressed his violation of the Protective Order and agreed to comply with the Order going forward. It is evident from the contents of Plaintiff's August 17 letter that counsel is not willing to do so.

> **The Court Should Order Plaintiff to Pay Gimlet Media's Expenses in Defending Against This Baseless Motion, and Further Sanction Plaintiff for Violating the Protective Order and for Refusing to Comply with it Going Forward.**

As discussed in detail above, Gimlet Media took extensive measures to protect its highly sensitive financial information. Plaintiff's counsel nevertheless defied this Court's Order and

---

[22] D.I. 33, at 8.
[23] Exh. A, Plaintiff's August 17, 2016 Letter to Gimlet Media, at 1.
[24] Plaintiff's counsel never intended to properly meet and confer on the discovery issue—the July 28 discovery demand states: "This shall be construed as Plaintiff's attempt to meet-and-confer." Exh. F, Plaintiff's July 28, 2016 Letter to Gimlet Media, at 1.
[25] *Id.*

7

intentionally disclosed that information to Plaintiff's CEO, and has since indicated that, given the opportunity, he would do the same. Plaintiff furthermore failed its duty to properly meet and confer prior to filing its Motion. As a result, Gimlet Media has been forced to respond to Plaintiff's Motion, and to address the many surrounding issues. In view of Plaintiff's willful actions and imprudent justifications, Gimlet Media respectfully requests that the Court (1) order Plaintiff's counsel to comply with the Court's Protective Order, (2) deny Plaintiff's Motion to Compel until Plaintiff's counsel assents to such compliance, and (3) order Plaintiff to pay Gimlet Media's attorneys' fees and expenses in connection with this motion.

## II.    Plaintiff Has Refused to Comply With Gimlet Media's Demand for Relevant Financial Information and Damages Calculations.

It has now been more than eight (8) months since Gimlet Media, on December 4, 2015, served discovery requests on Plaintiff seeking its financial statements and damages calculations, including the following document request and interrogatory:

> **Request No. 19**
> The documents and things that support Plaintiff's computation of each category of damages and fees that Plaintiff has alleged it is entitled to collect, including materials bearing on the nature and extent of injuries suffered.
>
> **Interrogatory No. 20**
> Provide a computation of each category of damages and fees that Plaintiff has alleged it is entitled to collect and identify the documents or other evidentiary material upon which each computation is based, including materials bearing on the nature and extent of injuries suffered.

Plaintiff has yet to provide any insight into its actual damages calculation. After claiming Gimlet Media had no grounds to demand those calculations, Plaintiff provided supplemental Initial Disclosures that improperly lumped Defendant's profits and costs of the action into Plaintiff's purported actual damages formula, stating: "If Plaintiff elects actual damages, then it shall equal (1) Defendant's profits; (2) any damages sustained by the Plaintiff; and (3) the costs

8

of the action, said amount to be trebled and exemplary damages in view of the intentional nature of the acts complained of therein."[26] "Defendant's profits" and "costs of the action" are not part of the actual damages calculation, and there is thus no basis for Plaintiff's continued refusal to provide the same.[27, 28]

To date, Plaintiff has produced nothing more than a handful of vaguely worded invoices and a few canceled checks. It has produced no information regarding its actual damages calculations. With depositions of Plaintiff's witnesses scheduled for September 13 and 14 quickly approaching, Gimlet Media requires this information, to which it is entitled, so that it may conduct effective depositions of Plaintiff's witnesses. Gimlet Media accordingly respectfully requests that the Court order Plaintiff's production of the requested discovery.

### III.  CONCLUSION

For the above reasons, Gimlet Media respectfully requests that the Court deny Plaintiff's Motion to Compel, order Plaintiff's counsel to comply with the Protective Order, order Plaintiff to produce the requested documents and information, and order Plaintiff to pay Gimlet Media's attorneys' fees and expenses in bringing this motion.

Dated: August 19, 2016

/s/ Stephanie G. Stella
John L. Welch
Stephanie G. Stella (*admitted pro hac vice*)
WOLF, GREENFIELD & SACKS, P.C.
600 Atlantic Avenue
Boston, MA 02210
Telephone: (617)-646-8000
John.Welch@wolfgreenfield.com
Stephanie.Stella@wolfgreenfield.com

Martin B. Schwimmer

---

[26] Exh. G, Plaintiff's Amended Rule 26(a) Disclosures (excerpt), at 2.
[27] Exh. G, Plaintiff's Amended Rule 26(a) Disclosures (excerpt), at 3.
[28] In another twist, despite having asserted no claim or factual basis for counterfeiting, Plaintiff contends for the first time in the supplemented Initial Disclosures that it "will seek enhanced statutory damages of not more than $2,000,000 per counterfeit mark per type of good."

9

                LEASON ELLIS LLP
                One Barker Avenue, Fifth Floor
                White Plains, New York 10601
                Telephone: (914) 288-0022
                Schwimmer@LeasonEllis.com

*Attorneys for Defendant*

**CERTIFICATE OF SERVICE**

  I certify that this document is being filed through the Court's electronic filing system, which serves counsel for other parties who are registered participants as identified on the Notice of Electronic Filing (NEF).  Any counsel for other parties who are not registered participants are being served by first class mail on the date of electronic filing.

                */s/ Stephanie G. Stella*
                Stephanie G. Stella