FILED
IN CLERK'S OFFICE
US DISTRICT COURT E.D.N.Y.
FEB 1 2 2020
BROOKLYN OFFICE

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-----------------------------------------------------------------X

REPLY ALL CORP.,

        Plaintiff,

v.

GIMLET MEDIA, INC.,

        Defendant.
-----------------------------------------------------------------X

**DECISION & ORDER**
15-CV-4950 (WFK)(PK)

**WILLIAM F. KUNTZ, II, United States District Judge:** By Amended Complaint filed on July 25, 2017 (the "Amended Complaint"), Plaintiff Reply All Corp. ("Plaintiff") brings this action against Defendant Gimlet Media, Inc. ("Defendant") alleging (1) trademark infringement under the Lanham Act, 15 U.S.C. § 1114(1); (2) false designation of origin under the Lanham Act, 15 U.S.C. § 1125(a); and (3) reverse confusion under 15 U.S.C. §§ 1114 and 1125, and New York common law. Defendant moves for summary judgment on all of Plaintiff's claims. For the reasons stated below, the Court grants the motion of the Defendant for summary judgment in its entirety and dismisses the Amended Complaint.

## BACKGROUND AND PROCEDURAL HISTORY

The Court finds the following facts from the parties' Local Rule 56.1 Statements, declarations, deposition testimony, and other evidence submitted in support of the motion, to be undisputed or construed in the light most favorable to Plaintiff, the non-moving party. Where facts in a party's Rule 56.1 Statement are supported by citations to evidence and denied by conclusory statements without citations to conflicting evidence, the Court finds such facts to be true. E.D.N.Y. Local Rules 56.1(c)–(d).

Plaintiff, a Delaware Corporation, was incorporated in 2012 by co-founders Zachariah Abramowitz and Ari Gold. Pl. Statement of Facts, ¶¶ 1–3, ECF No. 92-1 ("Pl. St."). Plaintiff provides a software service "through which users can create and share publicly available conversations." Pl. St. ¶¶ 1–4. Defendant is a media company producing podcasts, including one titled *Reply All*. Pl. St. ¶ 15; Def. Statement of Facts, ¶¶ 3–9, ECF No. 155-2 ("Def. St.").

1

On August 27, 2013, Plaintiff registered the trademark "ReplyAll" ("Plaintiff's Mark") for "computer services, namely, creating an on-line community for registered users to form groups and create publicly viewable conversations where group members are the only individuals who can contribute to the conversations." REPLYALL, Registration No. 4391220. Plaintiff offers its service from its own website, ReplyAll.me. Pl. St. ¶ 3. Plaintiff's primary focus shifted, however, towards providing software to allow external established websites to publish conversations. *Id.* ¶ 6.

Unaware of the existence of Plaintiff's trademark or company, podcast hosts working for Defendant named their new podcast *Reply All* in the fall of 2014. Def. St. ¶¶ 7–8. The podcast hosts selected the name for two reasons: first, the connection to the Internet and second, the intention to connect each episode of the podcast to the Internet. Def. St. ¶¶ 3, 9. On November 6, 2014, Defendant published its first *Reply All* podcast episode. Pl. St. ¶ 16; Def. St. ¶ 6. Defendant's advertising for the podcast included a logo incorporating the name. Pl. St. ¶ 36; Def.'s Combined Mem. of Law in Supp. of Mots. for Summ. J. of No Infringement Liability and No Damages, 23–24, ECF No. 88-1 ("Def. Mem.").

After selecting the name *Reply All*, Defendant searched the United States Patent and Trademark Office ("USPTO") records and found Plaintiff's mark, ReplyAll, registered only for software. Def. St. ¶ 10. Defendant sought the advice of counsel, who indicated the use of "Reply All" as the name of a podcast would not infringe on Plaintiff's rights. *Id.* ¶ 11. Nonetheless, in December of 2014, Defendant contacted Plaintiff and began negotiating a potential licensing agreement. Pl. St. ¶¶ 42–63. Negotiations collapsed and the parties failed to reach a licensing agreement. *Id.* ¶ 62.

Defendant then sought to register a trademark with the USPTO. Def. St. ¶ 12. The USPTO issued a registration to Defendant for the REPLY ALL mark ("Defendant's Mark") for "entertainment services, namely, providing podcasts on the subject of the internet." REPLY ALL, No. 4817504. In December 2016, Defendant changed the logo of its podcast to a new logo, continuing to incorporate Defendant's Mark. Pl. St. ¶ 37.

Plaintiff filed suit against Defendant on August 24, 2015. Defendant now moves for summary judgment against all claims arguing it is entitled to judgment as a matter of law asserting there are no genuine disputes regarding any material facts in this case. Plaintiff has cross-moved for summary judgment on the issue of damages. The Court denies the cross motion of the Plaintiff for the reasons stated below.

## **LEGAL STANDARD**

Summary judgment is appropriate where the movant establishes there exists no genuine issue as to any material fact, and the movant is entitled to summary judgment as a matter of law. *Fendi Adele, S.R.L. v. Ashley Reed Trading, Inc.*, 507 F. App'x 26, 29 (2d Cir. 2013). "A fact is 'material' if it 'might affect the outcome of the suit under the governing law,' and it is 'genuinely in dispute' if 'the evidence is such that a reasonable jury could return a verdict for the nonmoving party.'" *WIZKIDS/NECA, LLC v. TIll Ventures, LLC*, 17-CV-2400 (RA), 2019 WL 1454666, at *3 (S.D.N.Y. Mar. 31, 2019) (Abrams, J.) (quoting *Roe v. City of Waterbury*, 542 F.3d 31, 35 (2d Cir. 2008)). In deciding a motion for summary judgment, the Court must "construe the facts in the light most favorable to the non-moving party and must resolve all ambiguities and draw all reasonable inferences against the movant." *Brod v. Omya, Inc.*, 653 F.3d 156, 164 (2d Cir. 2011). The movant has the burden of showing the absence of a disputed issue of material fact, after which the burden shifts to the nonmoving party to present specific

3

evidence showing a genuine dispute. *See Brown v. Eli Lilly & Co.*, 654 F.3d 347, 358 (2d Cir. 2011).

## DISCUSSION

Plaintiff asserts claims of trademark infringement and false designation under Sections 32 and 43 of the Lanham Act. Section 32(1)(a) prohibits any person from using in commerce "any reproduction, counterfeit, copy, or colorable imitation of a registered mark in connection with . . . goods or services on or in connection with which such use is likely to cause confusion, or to cause mistake, or to deceive." 15 U.S.C. § 1114(1)(a). Section 43 similarly prohibits any person from using, in connection with any goods or services, "any false designation of origin, false or misleading description of fact, or false misleading representation of fact," likely to cause confusion, mistake, or deception as to "the affiliation, connection, or association," or as to "the origin, sponsorship, or approval" of the goods and services of another person. 15 U.S.C. § 1125(a)(1). Because Defendant does not contest the validity of Plaintiff's Mark, the dispute turns on whether Defendant's use of Defendant's Mark is likely to confuse consumers about the source of its product. Def. Mem. at 13–14.

To prevail on a claim for trademark infringement under either Sections 32 or 43 of the Lanham Act, Plaintiff must show (1) it has a valid trademark entitled to protection, and (2) Defendant's use of the mark is likely to cause consumer confusion. *See Excelled Sheepskin & Leather Coat Corp. v. Oregon Brewing Co.*, 897 F.3d 413, 417 (2d Cir. 2018). The Lanham Act protects against both "direct" and "reverse" confusion. *Id.*; *Lanham J.T. Colby & Co. v. Apple Inc.*, 586 F. App'x 8, 9 (2d Cir. 2014). Direct confusion is the likelihood consumers will "believe that the trademark owner sponsors or endorses the use of the challenged mark," while reverse confusion is the likelihood consumers will "believe that the junior user is the source of

4

the senior user's goods." *Kelly-Brown v. Winfrey*, 717 F.3d 295, 304 (2d Cir. 2013) (citations and internal quotations omitted). Plaintiff, as the senior user, brings claims under both theories of confusion against Defendant, the junior user. Am. Compl. at 23–33, ECF No. 71.

I. **The *Polaroid* Factors**

In assessing the likelihood of consumer confusion, courts in the Second Circuit apply the eight-factor balancing test set forth in *Polaroid Corp. v. Polarad Elecs. Corp.*, 287 F.2d 492, 495 (2d Cir. 1961). The factors are:

> (1) strength of the trademark; (2) similarity of the marks; (3) proximity of the products and their competitiveness with one another; (4) evidence that the senior user may "bridge the gap" by developing a product for sale in the market of the alleged infringer's product; (5) evidence of actual consumer confusion; (6) evidence that the imitative mark was adopted in bad faith; (7) respective quality of the products; and (8) sophistication of consumers in the relevant market.

*Starbucks Corp. v. Wolfe's Borough Coffee, Inc.*, 588 F.3d 97, 115 (2d Cir. 2009). No single factor is determinative as the "application of the *Polaroid* test is 'not mechanical, but rather, focuses on the ultimate question of whether, looking at the products in their totality, consumers are likely to be confused.'" *Id.* (quoting *Star Indus., Inc. v. Bacardi & Co. Ltd.*, 412 F.3d 373, 384 (2d Cir. 2005)). Under the *Polaroid* factors, the Court concludes there is no likelihood of confusion. Each *Polaroid* factor is addressed in turn.

A. **Strength of the Trademark**

The strength of a mark measures "its tendency to identify the goods sold under the mark as emanating from a particular, although possibly anonymous, source." *Lexington Mgmt. Corp. v. Lexington Capital Partners*, 10 F. Supp. 2d 271, 278 (S.D.N.Y. 1998) (Preska, J.) (internal quotations marks omitted). In analyzing this factor, courts consider the inherent distinctiveness of the mark, based on its characteristics and any acquired distinctiveness in the marketplace. *Akiro LLC v. House of Cheatham, Inc.*, 946 F. Supp. 2d 324, 333 (S.D.N.Y. 2013) (Rakoff, J.);

*Paco Sport, Ltd. v. Paco Rabanne Parfums*, 86 F. Supp. 2d 305, 311–12 (S.D.N.Y. 2000) (Sprizzo, J.). As to inherent distinctiveness, courts classify a mark into one of four categories, each considered stronger than the one before: "(1) generic, (2) descriptive, (3) suggestive, and (4) arbitrary or fanciful." *Abercrombie & Fitch Co. v. Hunting World, Inc.*, 537 F.2d 4, 9 (2d Cir. 1976). A registered trademark is presumptively distinctive. *See Lane Capital Mgmt., Inc. v. Lane Capital Mgmt., Inc.* 192 F.3d 337, 345 (2d Cir. 1999) ("Registration by the PTO without proof of secondary meaning creates the presumption that the mark is more than merely descriptive, and, thus, that the mark is inherently distinctive."); *Lois Sportswear, U.S.A., Inc. v. Levi Strauss & Co.*, 799 F.2d 867, 871 (2d Cir. 1986). But even if the mark is registered, the right to use it is limited to the goods and services specified in the registration certificate. 15 U.S.C. §§ 1115(a), (b).

In this case, Plaintiff's Mark is for use on "computer services, namely, creating an on-line community for registered users to form groups and create publicly viewable conversations where group members are the only individuals who can contribute to the conversation." REPLYALL Registration, No. 4391220. In contrast, Defendant's Mark is for use in "entertainment services, namely, providing podcasts on the subject of the internet." REPLY ALL Registration No. 4817504.

The Court finds Plaintiff's Mark falls into the category of "suggestive." The USPTO's decision to register Plaintiff's Mark without requiring proof of secondary meaning "affords a rebuttable presumption that the mark is suggestive or arbitrary or fanciful." *Abercrombie & Fitch*, 537 F.2d at 11. Though Plaintiff's Mark is registered with the USPTO, the Court does not find Plaintiff's Mark to rise to the level of arbitrary or fanciful. Plaintiff's Mark is classified as "suggestive" rather than "arbitrary or fanciful" because the term "reply all" is a term in common

use. In evaluating the strength of Plaintiff's Mark, this Court finds Plaintiff's Mark is "at best moderately strong." *Star Indus.*, 412 F.3d at 385.

Plaintiff's lack of sales,[1] marketing expenditures,[2] and general absence from the marketplace[3] demonstrate a lack of commercial strength *Nora Beverages, Inc. v. Perrier Grp. of Am., Inc.*, 269 F.3d 114, 123 (2d Cir. 2001) (finding the plaintiff's mark weak due to "its low level of commercial success and small advertising budget relative to market competitors"). Moreover, "Reply All" is the federally registered trademark of third party individual Donna Lewis. Def. Mem. at 21. Ms. Lewis, like Gimlet Media, uses her mark in connection with "entertainment services." Def. Mem at 21; Pl.'s Mem. of Law in Opp. to Def.'s Mot. for Summ. J. at 19–20 ("Pl. Mem."). Notably, the USPTO permitted Defendant's "Reply All" application to proceed to registration without reference to potential confusion with Ms. Lewis's or Plaintiff's' already registered marks. *See* REPLYALL Registration, No. 4391220; REPLY ALL Registration No. 4817504; Def. Mem. at 5; Pl. Mem. at 20.

Moreover, the term "reply all" is a term in common use and is readily recognized by anyone who uses email. Indeed, the "reply all" email command inspired Plaintiff's software and its adoption of the ReplyAll mark and double-arrow logo. Def. Mem. at 15. Thus, Plaintiff's mark is suggestive but weak in the market for computer services. Accordingly, this factor weighs in favor of Defendant.

---

[1] Plaintiff made $0.00 in 2012 and 2013, and $2,000.00 in 2014. Abramowitz Dep. 209:9–210:5, ECF No. 87-4 ("Abramowitz Dep."). Plaintiff has made no sales of premium subscriptions in the United States. *Id.* 211:4–212:23. Plaintiff makes no revenue from advertising. *Id.* 213:5–213:7.
[2] Plaintiff has "no advertising and marketing budget to speak of." *Id.* 262:23–264:15.
[3] Particularly during the Plaintiff's period of non-existence between March 1, 2017 and December 3, 2019 when Plaintiff allowed its corporate existence to lapse for failure to pay fees. Defendant Gimlet's Local Rule 56.1 Statement in Sup. of its Mot. for Summ. J., ¶ 2, ECF No. 155-2; Plaintiff's Response to Defendant's Local Rule 56.1 Statement, ¶ 2, ECF No. 158-1.

**B. Similarity of the Marks**

The second *Polaroid* factor concerns the similarity of Plaintiff's Mark, ReplyAll, and Defendant's Mark, REPLY ALL. In analyzing this factor, "courts consider whether the similarity of the marks is likely to cause confusion among potential customers." *Arrow Fastener Co. v. Stanley Works*, 59 F.3d 384, 394 (2d Cir. 1995). Side by side comparisons are insufficient. *See Universal City Studios, Inc. v. Nintendo Co.*, 746 F.2d 112, 117 (2d Cir. 1984) ("[J]uxtaposing fragments of each mark does not demonstrate whether the marks as a whole are confusingly similar."). Similarity is a holistic consideration turning on the overall impression created by the marks, considering the contexts in which they appear and the totality of the circumstances. *Gruner + Jahr USA Publ'g v. Meredith Corp.*, 991 F.2d 1072, 1078 (2d Cir. 1993); *see also Lemme v. Nat'l Broad. Co.*, 472 F. Supp. 2d 433, 448 (E.D.N.Y. 2007) (Hurley, J.) (finding show titles "American Dreams" and "AMERICAN DREAM" not confusingly similar because of differences in color and typeface, the prominent display of the distinctive NBC logo with defendant's title, and defendant's national distribution versus plaintiffs' local cable distribution); *Declemente v. Columbia Pictures Indus., Inc.*, 860 F. Supp. 30, 48 (E.D.N.Y. 1994) (Spatt, J.) (finding "Karate Kid" marks not confusingly similar "[b]ecause the marks are used for different purposes and are presented to the public differently, even though they say the same thing").

Although the contested trademarks in the present case both include the words "reply all," the trademarks are not identical, and several distinguishing features reduce the likelihood of confusion. Plaintiff's "ReplyAll" logo is presented in light blue font, accompanied by a double arrow logo pointing to the right, and includes, underneath it, a tagline, "conversations as

content." Def. Mem. at 24. In contrast, Defendant's old "Reply All" logo is in blue font,[4] includes a double arrow logo pointing to the left, with a tagline, "A Show About the Internet." *Id.* Moreover, potential consumers view the trademarks in different contexts. While Plaintiff's Mark is for publishing software, Pl. St. ¶¶ 3–6, Defendant's Mark is for a journalistic podcast, Def. St. ¶¶ 3–4. Thus, the parties' marks are used for different purposes and are presented differently to the public. Although the marks have visual and aural similarities, because of the distinctions in the products they represent, their logos, and market appeal, the Court finds this factor favors Defendant. The marks are not similar enough to cause confusion among potential consumers.

### C. Competitive Proximity

Competitive proximity applies "to both the subject matter of the commerce in which the two parties engage and the geographic areas in which they operate." *Guthrie Healthcare Sys. v. ContextMedia, Inc.*, 826 F.3d 27, 39 (2d Cir. 2016). In analyzing this factor, courts consider differences in content, geographic distribution, market position, and market appeal. *Paco Sport*, 86 F. Supp. 2d at 316.

Plaintiff argues its ReplyAll online conversation platform and Defendant's *Reply All* podcast are in "highly related areas of commerce and geographic proximity." Pl. Mem. at 22. Plaintiff's Reply All product is software used by consumers to publish group, text-based content on webpages. Pl. St. ¶¶ 4–6. Defendant's primary business is "the production and monetization of podcasts." Def. Mem. at 25. Defendant's podcasts, including *Reply All*, are available for streaming and download on various platforms, *e.g.*, SoundCloud, Spotify, and iTunes. *Id.*

---

[4] Plaintiff avers Defendant's old logo is the allegedly infringing mark. *See* Pl. Mem. at 22.

9

Defendant's services, unlike Plaintiff's, are not web-based; they do not require consumers to open a web browser or visit a webpage. Def. Mem. at 4.

Plaintiff's and Defendant's products do not directly compete, nor do they serve a similar purpose, or appear in the same channels of commerce. *J.T. Colby & Co. v. Apple, Inc.*, 586 F. App'x. 8, 10 (2d Cir. 2014). The USPTO approved registration of Defendant's Mark for "entertainment services, namely, providing podcasts on the subject of the internet" despite Plaintiff's existing registration of its mark for "computer services, namely, creating an on-line community for registered users," suggesting the marks operate in sufficiently distinct markets and are unlikely to be confused for one another. *Murphy Door Bed Co. v. Interior Sleep Sys., Inc.*, 874 F.2d 95, 101 (2d Cir. 1989) (holding the decision of the USPTO "is to be accorded great weight").

There is significant competitive distance between Plaintiff's software and the production and monetization of Defendant's podcast business. An individual searching for conversation-enhancing software is unlikely to be confused by the existence of a podcast bearing the same name.

### D. Bridging the Gap

The "bridging the gap" factor examines the probability the senior user will enter the junior user's market or consumers perceive such an overlap as probable. *Star Indus., Inc.*, 412 F.3d at 387; *Paco Sport*, 86 F. Supp. 2d at 318. This factor intends to protect the senior user's future interest in entering a related field, but is irrelevant when the products compete with each other. *Starbucks Corp.*, 588 F.3d at 115. "In analyzing this factor, the courts have defined the junior user's market narrowly, using such parameters as price range, target clientele, and distribution channels." *Paco Sport*, 86 F. Supp. 2d at 318.

There is no indication Plaintiff plans to move into the Defendant's field, the development or monetization of podcasts. Since August 2012, Plaintiff has used its mark in commerce and in connection with the computer services it provides. Pl. St. ¶ 4. Plaintiff has adduced no evidence any consumer would see it as probable that Plaintiff would begin to develop or monetize podcasts using Plaintiff's Mark. The Court concludes there is no likelihood of Plaintiff bridging the gap and finds this factor favors the Defendant. *Star Indus., Inc.*, 412 F.3d at 387.

### E. Actual Confusion

It is "black letter law that actual confusion need not be shown to prevail under the Lanham Act, since actual confusion is very difficult to prove and the Act requires only a likelihood of confusion as to source." *Guthrie Healthcare Sys. v. ContextMedia, Inc.*, 826 F.3d 27, 45 (2d Cir. 2016) (quoting *Lois Sportswear*, 799 F.2d at 875). Evidence of actual confusion may consist of consumer-survey evidence or anecdotal evidence. *WIZKIDS/NECA*, 2019 WL 1454666, at *11. Courts have nevertheless concluded "the absence of such evidence may favor the junior user." *Paco Sport*, 86 F. Supp. 2d at 319. And "the absence of surveys is evidence that actual confusion cannot be shown." *Sports Auth., Inc. v. Prime Hosp. Corp.*, 89 F.3d 955, 964 (2d Cir. 1996).

"[T]he relevant confusion to be avoided is that which affects purchasing decisions," *Sunenblick v. Harrell*, 895 F. Supp. 616, 631 (S.D.N.Y. 1995) (Newman, J.), *aff'd*, 101 F.3d 684 (2d Cir. 1996), because "trademark infringement protects only against mistaken purchasing decisions and not against confusion generally." *Lang v. Ret. Living Publ'g Co.*, 949 F.2d 576, 583 (2d Cir. 1991) (citation omitted).

Plaintiff argues "there has already been ample consumer confusion," Pl. Mem. at 1, pointing to eight misdirected social media posts, three unsolicited emails praising Defendant's

podcast from unidentified individuals, two emails from individuals mistaking Plaintiff and Defendant's podcast in conversation ("Iny and Silverman Emails"), and one inquiry by a "potential new customer" of Plaintiff into whether Plaintiff was related to Defendant's podcast ("Nickerson Email"), *id.* at 12–14; Pl. St. ¶ 64. Plaintiff submitted neither evidence of consumer surveys nor any other evidence of lost sales. Defendant presented neither studies nor any other evidence contrary to a finding of consumer confusion but objects to Plaintiff's characterization of the presented anecdotal evidence. Def. Mem. at 31.

Drawing all plausible inferences in favor of the Plaintiff, there is scant evidence to support a finding of actual confusion. Misdirected social media posts and unsolicited emails praising Defendant's podcast are evidence of general confusion and not mistaken purchasing decisions, damage to goodwill, or loss of control of reputation. *Sports Auth.*, 89 F.3d at 963; *Lang*, 949 F.2d at 583. Plaintiff's contention the misdirected social media posts and emails "actively divert[ed] consumers away from ReplyAll's website," Pl. Mem. at 28, is inapposite. A majority of those posts were individuals interacting *with Plaintiff* in the mistaken belief they were interacting with Defendant's Podcast. Accordingly, such interactions do not support an argument that confusion "actively divert[ed] consumers away from" Plaintiff's website.

The Iny and Silverman Emails, in which two individuals mistake Plaintiff and Defendant's podcast do not sufficiently demonstrate actual confusion. The Iny Email lacks sufficient context to determine the relationship between the sender and the Plaintiff. Pl. St. ¶ 65. While the Silverman Email provides additional context, Ms. Silverman was not a consumer, or even a potential consumer of Plaintiff's product—her correspondence was with a third party in an unrelated business transaction. Pl. St. ¶ 65.

Plaintiff contends, without authority in the record, the confused individuals were

12

"potential investors" in Plaintiff's business. Pl. Mem. at 27. The Court draws all inferences in favor of Plaintiff, yet speculative conclusions unsupported by the record are not a sufficient basis to survive summary judgment. *Fed. Deposit Ins. Corp. v. Great Am. Ins. Co.*, 607 F.3d 288, 292 (2d Cir. 2010). Additionally, Plaintiff takes the position that by alleging associational confusion it need not present testimony from any consumer who intended to buy its product, citing *Star Indus.*, 412 F.3d at 390. Plaintiff misstates the Second Circuit's holding in *Star Industries*. The holding in *Star Industries* cited by Plaintiff engages the question of consumer sophistication, the eighth *Polaroid* factor, rather than evidence of consumer confusion. 412 F.3d at 390. Plaintiff's "evidence of actual confusion consist[s] . . . [of] a number of hearsay statements by unidentified and unidentifiable declarants." *Id.* at 388.

Plaintiff has identified a single instance of potential consumer confusion with sufficient context to support a plausible claim for actual confusion: the Nickerson Email. *See* Pl. St. ¶ 65. However, this single instance of tenuous confusion fails to establish a plausible claim for actual confusion. Critically, the extent of the confusion in the Nickerson Email is an aside with Ms. Nickerson *inquiring* whether there is a relationship between Plaintiff and the Podcast, not actual confusion. The Court, in light of the scant evidence for consumer confusion coupled with the lack of consumer surveys, concludes this factor is neutral. *Sports Auth.*, 89 F.3d at 964.

### F. Bad Faith

This factor concerns whether the Defendant "adopted its mark with the intention of capitalizing on the senior user's reputation and goodwill and any confusion between his and the senior user's product." *Paco Sport*, 86 F. Supp. 2d at 324 (quoting *Sports Auth.*, 89 F.3d at 964) (internal brackets omitted).

There is no evidence Defendant selected the Reply All mark in bad faith. Defendant

13

asserts it chose the Reply All mark because it is suggestive of the Internet and Defendant intended its podcast to focus on stories about the Internet. Def. St. ¶¶ 3, 9. Defendant selected the name "Reply All," while unaware of the existence of Plaintiff. *Id.* ¶¶ 7–8. Defendant subsequently searched the USPTO's records and discovered Plaintiff had previously registered its mark for use in software. *Id.* ¶ 10. Defendant also consulted counsel who indicated Defendant's use of its mark would not be infringing. *Id.* ¶ 11. Finally, the USPTO issued a valid registration for Defendant's Mark after and despite having issued a registration for Plaintiff's Mark. *Id.* ¶ 12; REPLY ALL Registration No. 4817504. Plaintiff contends Defendant evinced bad faith when it filed for the trademark after negotiating with Plaintiff over use of "Reply All." Pl. Mem. at 29. The Court disagrees. Defendant could not have adopted the mark with the intention of capitalizing on Plaintiff's reputation or goodwill because Defendant did not know Plaintiff existed at the time it selected the mark. Def. St. ¶ 7; *see also Paco Sport*, 86 F. Supp. 2d at 324. Moreover, Defendant's actions in engaging in negotiations, seeking the advice of counsel, and successfully registering its mark with the UPSTO are strong indicia of good faith on the part of the Defendant.

For these reasons, the Court finds Defendant adopted its Reply All mark in good faith. Accordingly, this *Polaroid* factor favors Defendant.

### G. Respective Quality

This factor concerns "whether the senior user's [Plaintiff's] reputation could be jeopardized by virtue of the fact the junior user's [Defendant's] product is of inferior quality." *Arrow Fastener Co. v. Stanley Works*, 59 F.3d 384, 398 (2d Cir. 1994). The Second Circuit explained, "a very marked difference in quality between the two products would militate against finding a likelihood of confusion as consumers 'will be less likely to assume that the senior user

whose product is high-quality will have produced the lesser-quality products of the junior user.'" *Star Indus.*, 412 F.3d at 389 (quoting *Savin Corp. v. Savin Grp.*, 391 F. 3d 439, 461 (2d Cir. 2004)). When the products are different, any similarities in quality are unlikely to cause consumer confusion. *Paco Sport*, 89 F. Supp. 2d at 326.

Plaintiff concedes Defendant's Podcast is of high quality. Pl. Mem. at 30. Defendant insists Plaintiff's product is of a lower quality but asserts this position without any citation to the record. Def. Mem. at 37. Though the record reflects generally weak sales and performance on the part of Plaintiff, *see supra* footnotes 1–3, that alone is insufficient to arrive at a determination of poor quality. *See Star Indus.*, 412 F.3d at 389. Accordingly, the Court finds this factor favors neither party.

### H. Sophistication of Customers

"This factor examines the sophistication of the typical consumers and the level of care they exercise when purchasing the products at issue." *Paco Sport*, 86 F. Supp. 2d at 326. The more sophisticated a consumer, the less likely that consumer will be confused by similar marks in the marketplace. *Savin Corp.*, 391 F.3d at 461. In analyzing consumer sophistication, courts "consider[] the general impression of the ordinary purchaser, buying under the normally prevalent conditions of the market and giving the attention such purchasers usually give in buying that class of goods." *Star Indus.*, 412 F.3d at 390 (quoting *Sports Auth.*, 89 F.3d at 965). "In a case involving different media vehicles, the principle groups of potentially confused consumers are readers/viewers and advertisers." *Parenting Unlimited Inc. v. Columbia Pictures Television Inc.*, 743 F. Supp. 221, 229 (S.D.N.Y. 1990) (Lowe, J.). "[T]he pertinent question is whether numerous ordinary prudent *purchasers* would likely be misled or confused as to the source of the product in question because of the entrance in the marketplace of Defendant['s]

mark." *Savin Corp.*, 391 F.3d at 461 (internal quotations omitted).

Defendant suggests a high level of sophistication on the part of both advertisers and the general audience, while Plaintiff argues the Court should find a low level of consumer sophistication because "both Parties' products are offered to their audiences for free." Pl. Mem. at 31. However, as with many Internet companies, the revenue for Plaintiff's products comes from advertisers and sponsors. Pl. St. ¶¶ 6, 13. Moreover, Plaintiff no longer measures the number of individual users of its platform, *see* Abramowitz Dep. 345:8–347:18, and instead has shifted to a revenue model focused on corporate sponsorships and revenue sharing. *See id.* at 187:14–21, 207:24–208:18.

During his deposition, Zachariah Abramowitz, a co-founder and CEO of Plaintiff, stated Plaintiff expected to close a $1,500,000.00 transaction to host its software on a major website. *Id.* at 226:20–230:8. Advertisers and sponsors prepared to enter $1,500,000.00 transactions are undoubtedly "extremely sophisticated and therefore quite capable of distinguishing between" Plaintiff's software product and Defendant's podcast. *Parenting Unlimited*, 743 F. Supp. at 229.

While some members of the public who listen to Defendant's Podcast or view Plaintiff's software online may be unsophisticated, the Court finds the advertisers, sponsors, and "purchasers" of Plaintiff's and Defendant's products more likely than not to include individuals who are highly sophisticated. *Savin Corp.*, 391 F.3d at 461; *Parenting Unlimited*, 743 F. Supp. at 229. This factor favors the Defendant.

## II. Balancing the Factors

"In balancing the *Polaroid* factors, courts generally should not treat any single factor as dispositive; nor should a court treat the inquiry as a mechanical process by which the party with the greatest number of factors wins. Instead, the court should focus on the ultimate question of

whether consumers are likely to be confused." *Nat. Organics, Inc. v. Nutraceutical Corp.*, 426 F.3d 576, 578 (2d Cir. 2005) (internal quotation marks omitted). A majority of the *Polaroid* factors favor the Defendant and the remainder are neutral. The Court finds consumers searching for conversation-enhancing software are unlikely to be confused by the existence of a podcast bearing the same name. There is no likelihood of consumer confusion between Plaintiff's Mark and Defendant's Mark on the part of consumers. *See id.*

Plaintiff's claim for reverse confusion also fails. Given the substantial differences in Plaintiff's and Defendant's products and their respective markets, the record does not support a reasonable inference of reverse confusion, which "is the misimpression that the junior user is the source of the senior user's goods." *Banff, Ltd. v. Federated Dep't Stores, Inc.*, 841 F.2d 486, 490 (2d Cir. 1988). Further, based on the record, the Court cannot find a "reasonable inference that [Defendant] intended to promote such confusion." *Black Diamond Sportswear, Inc. v. Black Diamond Equip., Ltd.*, 06-3508-CV, 2007 WL 2914452, at *4 (2d Cir. Oct. 5, 2007).

Accordingly, Defendant's motion for summary judgment on all of Plaintiff's Lanham Act claims is granted.

### III. State Law Claims

Plaintiff also asserts claims for common law reverse confusion. This Court grants Defendant's motion for summary judgment on those claims. To prevail on its common law claim of reverse confusion, Plaintiff must demonstrate a "likelihood of confusion as to the source or sponsorship of defendant's products," *Standard & Poor's Corp., v. Commodity Exch., Inc.*, 683 F.2d 704, 708 (2d Cir. 1982), which is assessed under the same confusion standard as for infringement under the Lanham Act, *WIZKIDS/NECA*, 2019 WL 1454666 at *15 (citation

omitted). As Plaintiff has failed to meet this standard, its common law reverse confusion claim fails.

**IV.     Remaining Issues**

The Court grants Defendant's motion for summary judgment on all counts. The Court has reviewed the Plaintiff's motion for summary judgment and finds it to be without merit.

## **CONCLUSION**

For the foregoing reasons, Defendant's motion for summary judgment, ECF No. 88, is GRANTED. The Clerk of Court is respectfully directed to terminate all pending motions and close this case.

**SO ORDERED.**

s/WFK

HON. WILLIAM F. KUNTZ, II
UNITED STATES DISTRICT JUDGE

Dated: February 12, 2020
      Brooklyn, New York