UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------X
REPLY ALL CORP.,                                :
                                                :
              Plaintiff,                         :
                                                :
              v.                                :    **DECISION & ORDER**
                                                :    15-CV-4950 (WFK) (PK)
GIMLET MEDIA, INC.,                             :
                                                :
              Defendant.                         :
------------------------------------------------------------X

**WILLIAM F. KUNTZ, II, United States District Judge:** By Amended Complaint filed on July 25, 2017 (the "Amended Complaint"), Reply All Corp. ("Plaintiff") sued Gimlet Media, Inc. ("Defendant") alleging (1) trademark infringement under the Lanham Act, 15 U.S.C. § 1114(1); (2) false designation of origin under the Lanham Act, 15 U.S.C. § 1125(a); and (3) reverse confusion under 15 U.S.C. §§ 1114 and 1125, and New York common law. On February 12, 2020, this Court granted Defendant's motion for summary judgment in its entirety and dismissed the Amended Complaint. *See* ECF No. 181. On February 19, 2021, the Second Circuit affirmed this Court's decision. ECF No. 197. On March 13, 2020, Defendant moved to recover attorneys' fees and costs—pursuant to 15 U.S.C. § 1117 and 28 U.S.C. § 1927—in the total amount of approximately $1,400,000.00 from Plaintiff. ECF Nos. 188, 193. For the reasons stated below, Defendant's motion is GRANTED.

## BACKGROUND

On March 13, 2020, Defendant filed a motion seeking to recover attorneys' fees and costs—pursuant to 15 U.S.C. § 1117 and 28 U.S.C. § 1927—in the total amount of approximately $1,400,000.00 from Plaintiff. The Court assumes the parties familiarity with the underlying facts of this case, which are set forth in full both in the Court's summary judgment ruling, *see* ECF No. 181 at 1–3, and in the parties' briefings, *see* Defendant's Memorandum of Law in Supports of Its Motion for Attorneys' Fees ("Def. Mem."), ECF No. 193-1 at 1–5; *see also* Plaintiff Reply All Corp's Opposition to Defendant's Motion for Attorneys' Fee ("Pl. Opp."), ECF No. 194 at 1–4. Accordingly, the Court proceeds to evaluate Defendant's motion below.

1

## DISCUSSION

### I. Attorneys' Fees Under the Trademark Statute, 15 U.S.C. § 1117

Under Section 35(a) of the Lanham Act, 15 U.S.C. § 1117(a), a court "may award reasonable attorney's fees to the prevailing party" in "exceptional cases." "[A]n 'exceptional' case is simply one that stands out from others with respect to the substantive strength of a party's litigating position (considering both the governing law and the facts of the case) or the unreasonable manner in which the case was litigated." *Octane Fitness, LLC v. ICON Health & Fitness, Inc.*, 572 U.S. 545, 554 (2014) (considering the meaning of parallel "exceptional case" provision under the Patent Act, 35 U.S. Code § 285); *see also Sleepy's LLC v. Select Comfort Wholesale Corp.*, 909 F.3d 519, 531 (2d Cir. 2018) (concluding that under the Lanham Act, an exceptional case is one that stands out from others in the manner articulated by *Octane Fitness*). Courts are to "evaluate the totality of the circumstances," looking to "a wide variety of factors, including frivolousness, motivation, objective unreasonableness (both in the factual and legal components of the case) and the need in particular circumstances to advance considerations of compensation and deterrence." *Sleepy's LLC*, 909 F.3d at 530 (internal quotation marks omitted)." Ultimately, a district courts determination of 'exceptionality' depends on "the case-by-case exercise of their discretion, considering the totality of the circumstances." *Octane Fitness, LLC* 572 U.S. at 554.

      i.    <u>Plaintiff's Claim was Frivolous and Objectively Unreasonable</u>

The underlying action was frivolous and objectively unreasonable. "The Second Circuit . . . has defined 'objective unreasonableness' for legal theories as whether the argument is frivolous . . . ." *PaySys Int'l, Inc. v. Atos Se*, 14-CV-10105, 2019 WL 2051812, at *9 (S.D.N.Y. May 9, 2019) (Cote, J.). "An action is 'frivolous' when either: (1) the factual contentions are

clearly baseless, such as when allegations are the product of delusion or fantasy; or (2) the claim is based on an indisputably meritless legal theory." *Livingston v. Adirondack Beverage Co.*, 141 F.3d 434, 437 (2d Cir. 1998) (internal quotation marks omitted).

From the beginning of the underlying litigation, Plaintiff has had a fatally weak claim with no hope for success. As Defendant pointed out in their first filing, "Gimlet Media, provides wholly discrete services under REPLY ALL such that no reasonable consumer would be confused." ECF No. 1, Ex. C. In granting Defendant's motion for summary judgment, this Court agreed, noting that "There is significant competitive distance between Plaintiff's software and the production and monetization of Defendant's podcast business." ECF No. 181 at 10.

In this case, Plaintiff alleged "actual confusion" in the marketplace, pointing to a screenshot from a LinkedIn account of Plaintiff's mark. The screenshot showed no "likes," "comments," or "shares" in the preceding weeks. ECF No. 1 ¶ 29. As this Court noted in its opinion: "Plaintiff's lack of sales, marketing expenditures, and general absence from the marketplace demonstrate a lack of commercial strength." ECF No. 181 at 7 (citations omitted).

Most importantly, Plaintiff never offered any proof of lost sales or damage to its economic value resulting from Gimlet's lawsuit nor showed that consumers were confused about the respective brands. Evidence of actual confusion can "involve purchases or prospective purchasers." *Lang v. Ret. Living Pul'g Co.*, 949 F. 2d 576, 583 (2d Cir. 1991). Here, Plaintiff repeatedly claimed to have produced "dozens of examples of instances of actual confusion . . . where its own customers have confused the two products." ECF No. 92 at 3. However, as the Court later summarized, Plaintiff alleged:

> "[E]ight misdirected social media posts, three unsolicited emails praising Defendant's podcast from unidentified individuals, two emails from individuals mistaking Plaintiff and Defendant's podcast in conversation . . . , and one inquiry by a 'potential new customer'

3

>of Plaintiff into whether Plaintiff was related to Defendant's podcast . . . . Plaintiff submitted neither evidence of consumer surveys nor any other evidence of lost sales."

ECF No. 191 at 11–12.  Plaintiff in fact testified twice that it could not name a single investor or customer lost because of Defendant's behavior.  ECF No. 89 Ex. L, 9/13/16 Abramowitz Tr., at 36:10-38:18, 206:22-207:12, 286:25-287:4; Ex. 4, 10/20/17 Abramowitz Tr., at 73:19-74:19.  In other words, little to no evidence supported Plaintiff's repeated claims of actual confusion and Plaintiff knew as much throughout the litigation.  Because Plaintiff suffered no actual damages, the differences between the parties' brands were clear, and the competitive distance between their enterprises significant, this Court concludes Plaintiff's underlying trademark claims were frivolous and objectively unreasonable.

        ii.       <u>Plaintiff Acted in Bad Faith, Intending to Extort an Unreasonable Settlement</u>

Plaintiff advanced multiple baseless damages theories in bad faith with the sole aim of extracting a settlement.  "The paradigmatic case of improper motive justifying an 'exceptional' case finding is where a plaintiff with no intention of testing the substance of its theories brings meritless claims to extract a nuisance value settlement based on the fact that defendants will be required to expend tens or hundreds of thousands of dollars in discovery." *Universal Church, Inc. v. Universal Life Church/ULC Monastery*, 14-cv-5213, 2019 WL 4601741, at *4 (S.D.N.Y. Sept. 19, 2019) (Buchwald, J.); *see also*, *I.O.B. Realty, Inc. v. Patsy's Brand, Inc.*, 19-cv-2776, 2020 WL 5518230, at *14 (S.D.N.Y. Sept. 13, 2020) (Fox, Mag.).

First, Plaintiff advanced a disgorgement of profits theory.  To recover profits under this theory, Plaintiff needed to show Gimlet had a deceptive intent in adopting its mark.  *George Basch Co. v Blue Coral, Inc.*, 968 F.2d 1532, 1538 (2d Cir. 1992).  However, at no point did the record show evidence of bad faith on the part of Defendant.  ECF No. 181 at 13 ("There is no evidence Defendant selected the Reply All Mark in bad faith.").  This Court in fact held that

4

Gimlet, "could not have adopted the mark with the intention of capitalizing on Plaintiff's reputation or goodwill because [Gimlet] did not know Plaintiff existed at the time it selected the mark" and because Gimlet's "actions in engaging in negotiations, seeking the advice of counsel, and successfully registering its mark with the UPSTO are strong indica of good faith . . . ." *Id.* Plaintiff was aware of these facts even before trial begin, *see, e.g.*, ECF No. 157, Ex. AH, Certified Tr. of Audio Recording of Parties' Negotiations, at 16:19-17:18, yet insisted on pressing a disgorgement of profits theory with no chance of success.

Second, Plaintiff sought to recover reasonable royalty damages. As with disgorgement of profits, reasonable royalty damages require deceptive intent. *See Life Indus. Corp. v. Ocean Bio-Chem Inc.*, 827 F. Supp. 926, 932 (E.D.N.Y. 1993) (Wexler, J.) ("Before a plaintiff is entitled to actual damages, he must prove either (1) 'actual consumer confusion or deception resulting from the violation,' or (2) 'that the defendant's actions were intentionally deceptive thus giving rise to a rebuttable presumption of consumer confusion.'") (internal citations omitted). But, as explained above, there was no indica of bad faith or deceptive intent at any time before or during the litigation. Additionally, reasonable royalty damages require a pre-existing licensing agreement. *See Apollo Theater Found., Inc. v. W. Int'l Syndication*, 2-cv-10037, 2005 WL 1041141, at * 13 (S.D.N.Y. May 5, 2005) (Cote, J.) ("Use of a royalty theory of recovery is generally limited to situations where the parties have had a trademark licensing relationship that facilitates computation of the reasonable royalty damages."). However, there was no such agreement in this case; Defendant pointed this out Plaintiff on at least two occasions. ECF No. 89, 39–40, ECF No. 157, 27–33. Again, Plaintiff had no chance of recovery on a reasonable royalty damages theory.

Even so, Plaintiff's expert offered various royalty rate opinions, none of which were tethered to reality and all of which were intended to pressure Defendant into settlement.  In one instance, Plaintiff's expert calculated damages by taking a percentage of revenues—as opposed to profits—thereby inflating proposed damages, *see* ECF No. 157-1 at 4, 29–31.  Later on summary judgment, Plaintiff advanced theories that its own expert conceded had no support in the case law.  ECF No. 157, Ex. AO, 9/20/19 Edelman Tr., at 92:2-8.  Also on summary judgment, Plaintiff advanced the argument that "Reply All will present evidence at trial, including through expert testimony, that the damages are in the range of $60 million."  ECF No. 156 at 2.  But again, this sum was unsupported by their expert's testimony, was not disclosed in discovery, and was not part of the Proposed Joint Pretrial Order.  *See* ECF No. 92, Ex. 18, 1/13/17 Edelman Rpt.; *see also* ECF No. 157, Ex. AL, 8/12/19 Edelman Supp. Rpt.; ECF 175 at 13–16.  Considering Plaintiff at one point offered to license their trademark for $1.00 per year, *see* ECF No. 157, Ex. AH, Certified Tr. of Audio Recording of Parties' Negotiations (Dec. 2, 2014), these increasingly tortured attempts to create a viable damages theory indicate bad faith and extortionary motives.

       iii.    <u>Need to advance considerations of compensation and deterrence</u>

Finally, an award of reasonable attorneys' fees and costs is necessary to compensate Gimlet Media for the resources expended in defending this action and to deter Plaintiff and others from pursuing similarly frivolous claims going forward.  *Beijing Daddy's Choice Sci. & Tech. Co. v. Pinduoduo Inc.*, 18-CV-6504, 2020 WL 729518, at *3–5 (S.D.N.Y. Feb. 13, 2020) (Buchwald, J.); *see Manhattan Review, LLC v. Yun*, 16-cv-0102, 2017 WL 11455317, at *7 (Sept. 21, 2017) (Kaplan, J.) (noting that even where "the merits of the . . . Lanham Act claims have not been addressed . . . the goals of compensation and deterrence are furthered by

6

compensating the defendants for litigating against claims that should not have been brought in the first place"). Here there is ample evidence that Plaintiff brought an objectively unreasonable action in bad faith. *Cf. Universal Church*, 2019 WL 4601741, at *4 (finding that the defendants did not establish a need to deter plaintiff where, *inter alia*, they failed either to show that the plaintiff brought the action to extort a settlement from the defendants, or to "identif[y] a broader pattern of plaintiff's conduct that th[e] Court should discourage"). Defendant has shown that Plaintiff used unreasonable litigation tactics that needlessly expanded the proceedings, *supra* §§ I.i, I.ii. Accordingly, Defendant has established that this is an exceptional case warranting the Court's exercise of discretion to award attorneys' fees under Section 35(a) of the Lanham Act.

## II.  Attorney's Fees Due to Vexatious Litigation under 28 U.S.C. § 1927

Defendant maintains Plaintiff's counsel should be personally liable for attorneys' fees because they vexatiously multiplied the proceedings. Def. Mem. at 22. "Any attorney . . . who so multiplies the proceedings in any case unreasonably and vexatiously may be required by the court to satisfy personally the excess costs, expenses, and attorneys' fees reasonably incurred because of such conduct." 28 U.S.C.A. § 1927. This statute "imposes an obligation on attorneys throughout the entire litigation to avoid dilatory tactics," and provides courts with a cudgel to use, in their discretion, "to deter unnecessary delays in litigation." *United States v. Int'l Bhd. of Teamsters, Chauffeurs, Warehousemen & Helpers of Am., AFL-CIO*, 948 F.2d 1338, 1345 (2d Cir. 1991) (quoting H.R. Conf. Rep. No. 1234, 96th Cong., 2d Sess. 8). To award attorney's fees against an attorney under § 1927, "a court must find clear evidence that (1) the offending party's claims were entirely without color, and (2) the claims were brought in bad faith—that is, motivated by improper purposes such as harassment or delay." *Kim v. Kimm*, 884 F.3d 98, 106 (2d Cir. 2018) (internal quotation marks omitted) (quoting *Eisemann v. Greene*, 204 F.3d 393,

7

396 (2d Cir. 2000)).  "A court may infer bad faith when a party undertakes frivolous actions that are completely without merit."  *Huebner v. Midland Credit Mgmt., Inc.*, 897 F.3d 42, 55 (2d Cir. 2018) (internal quotations and citations omitted).

For similar reasons as noted above, the Court finds that Plaintiff's counsel proceeded in bad faith by bringing objectively unreasonable and frivolous claims, *supra* § I.i, and by attempting to extort a nuisance settlement from Defendant by advancing unsubstantiated and legally incognizable damages theories, *supra* § I.ii.  These actions unduly multiplied the proceedings and forced Gimlet to expend significant resources, for example, by: hiring its own damages experts to rebut Plaintiff's baseless claims, *see, e.g.*, ECF No. 95, Ex. WW, 3/15/17 Weir Rpt.; Ex. 8, 9/13/19 Weir Rpt., filing two summary judgment motions regarding damages, *see* ECF Nos. 89, 157, filing a *Daubert* motion to preclude the testimony of Plaintiff's expert relating to the reasonable royalties, ECF No 157 at 29–33, and filing a motion in *limine* to exclude damage contentions and related evidence not disclosed during discovery or the Pretrial Order, ECF No 175 at 13–15.  Even though these tactics did not upset the proceedings before the Court—as summary judgment was granted in favor of Defendant—attorney's fees are nevertheless proper because Counsel knew of their claim's futility yet continued to impose costs on Defendant under increasingly fanciful legal theories.  *See Enmon v. Prospect Capital Corp.*, 675 F. 3d 138, 145 (2d Cir. 2012) (noting attorneys' fees under § 1927 "may be warranted even where bad-faith conduct does not disrupt the litigation").  Accordingly, the Court finds that Defendant is owed attorney's fees from Plaintiff's counsel for vexatious litigation under 28 U.S.C. § 1927.

**CONCLUSION**

For the foregoing reasons, Defendant's Motion for Attorneys' Fees is hereby GRANTED in its entirety.[1] The Court hereby refers this case to the Honorable Magistrate Judge Peggy Kuo for a calculation of the reasonableness and amount of fees due to Defendants, from Plaintiff and Plaintiff's counsel, respectively.

**SO ORDERED.**

s/ WFK
HON. WILLIAM F. KUNTZ, II
UNITED STATES DISTRICT JUDGE

Dated: April 5, 2021
      Brooklyn, New York

---

[1] The parties' motions to file their documents under seal are dismissed as MOOT. *See* ECF Nos. 191, 192.