**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NEW YORK
BROOKLYN DIVISION**

| | |
|---|---|
| REPLY ALL CORP.,<br><br>   Plaintiff,<br><br>v.<br><br>GIMLET MEDIA LLC (f/k/a GIMLET MEDIA, INC.)<br><br>   Defendant. | Civil Action No. 1:15-CV-04950-WFK-PK |

**DEFENDANT GIMLET'S MEMORANDUM OF LAW IN SUPPORT OF THE
<u>REASONABLENESS OF ITS ATTORNEYS' FEES</u>**

John L. Strand
Bryan S. Conley
Amanda B. Slade
600 Atlantic Avenue
Boston, MA 02210
Telephone: (617) 646-8000
john.strand@wolfgreenfield.com
bryan.conley@wolfgreenfield.com
amanda.slade@wolfgreenfield.com

## **TABLE OF CONTENTS**

INTRODUCTION ....................................................................................................................1

ARGUMENT ..........................................................................................................................2

I.    The Fees Gimlet Incurred for This Litigation Were Reasonable ...............................................2

     A.   Gimlet's Counsel's Hourly Rates Are Reasonable ....................................................2

          1.   Wolf Greenfield and Its Attorneys' Accomplishments in the Intellectual
              Property Field Justify Their Hourly Rates ...........................................................3

          2.   The Requested Hourly Rates are Reasonable for This District In Light of
              Wolf Greenfield's Qualifications and the High Quality of the Work
              Performed ..........................................................................................................5

          3.   Wolf Greenfield's Rates Are Comparable to Prevailing Rates for Similar
              Services in the Southern District of New York and District of Massachusetts..........6

          4.   Wolf Greenfield's Success in the Case and Gimlet's Paying of Its Invoices
               Further Attest to the Reasonableness of the Requested Hourly Rates....................10

     B.   The Time Gimlet's Counsel Expended Was Reasonable ..............................................12

          1.   Wolf Greenfield's Invoices Attest to Its Attorneys' Efficiency ............................14

          2.   Wolf Greenfield Appropriately Allocated Tasks Among Shareholders,
              Counsel, Associates, and Staff to Minimize Costs ..............................................15

          3.   Hours Expended on Collecting Attorneys' Fees ..................................................16

     C.   Further Evidence of Reasonableness ...........................................................................17

          1.   Gimlet Has Not Requested Reimbursement for All of the Costs and
              Appellate Fees to Which It Is Entitled................................................................17

           2.   The Discounts and Fee Reductions Reflected on Wolf Greenfield's Invoices
               Highlight the Reasonableness of Gimlet's Request for Attorneys' Fees...............18

II. Apportionment of Fees Between RAC and Its Counsel ............................................................20

     A.   RAC Should Be Exclusively Responsible for Fees Incurred from August 24,
        2015 to May 25, 2017 and Its Counsel Should Be Responsible for Fees Related
         to the Threatened State Court Action...........................................................................21

     B.   Joint and Several Liability is Appropriate for the Majority of Gimlet's Attorneys'
        Fees. ...........................................................................................................................22

CONCLUSION......................................................................................................................23

## <u>TABLE OF AUTHORITIES</u>

**CASES**

*Accusoft Corp. v. Quest Diagnostics, Inc.*,
    2014 WL 1393749 (D. Mass. Apr. 7, 2014).........................................................................10

*Arbor Hill Concerned Citizens Neighborhood Ass'n v. County of Albany*,
    522 F.3d 182 (2d Cir. 2008) ......................................................................................3, 7

*Barclays Capital Inc. v. Theflyonthewall.com*,
    No. 06 Civ. 4908 (Apr. 9, 2010)..........................................................................................9

*Barclays Capital Inc. v. Theflyonthewall.com*,
    2010 WL 2640095 (S.D.N.Y. June 30, 2010) ......................................................................8

*Bleecker Charles Co. v. 350 Bleecker St. Apartment Corp.*,
    212 F. Supp. 2d 226 (S.D.N.Y. 2002)................................................................................12

*Brady v. Wal-Mart Stores, Inc.*,
    455 F. Supp. 2d 157 (E.D.N.Y. 2006).........................................................................2, 11

*Clarke v. Frank*,
    960 F.2d 1146 (2d Cir. 1992) .............................................................................................12

*Cruz v. Local Union No. 3 of IBEW*,
    34 F.3d 1148 (2d Cir. 1994) ................................................................................................3

*Diaz v. Paragon Motors of Woodside, Inc.*,
    2008 WL 2004001 (E.D.N.Y. May 7, 2008).....................................................................16

*Elecs. Corp. of Am. v. Republic Indus., Inc.*,
    507 F.2d 409 (1st Cir. 1974)..............................................................................................18

*Gagne v. Maher*,
    594 F.2d 336 (2d Cir. 1979) ..............................................................................................17

*GAKM Res. LLC v. Jaylyn Sales Inc.*,
    2009 WL 2150891 (S.D.N.Y. July 20, 2009).................................................................9, 18

*Gen. Nutrition Inv. Co. v. Gen. Vitamin Ctrs., Inc.*,
    817 F. Supp. 2d 66 (E.D.N.Y. 2011)...................................................................................6

*Getty Petroleum Corp. v. Bartco Petroleum Corp.*,
    858 F.2d 103 (2d Cir. 1988) ..............................................................................................19

*Grant v. Martinez*,
    973 F.2d 96 (2d Cir. 1992) ................................................................................................12

*Indep. Living Aids, Inc. v. Maxi-Aids, Inc.*,
    303 F. Supp. 2d 327 (E.D.N.Y. 2004)......................................................................18

*InvesSys, Inc. v. McGraw-Hill Cos.*,
    369 F.3d 16 (1st Cir. 2004)......................................................................................14

*J.T. Kalmar GmbH v. KLS Lighting Co.*,
    2019 WL 3780091 (E.D.N.Y. Aug. 12, 2019) ...........................................................6

*Joint Stock Co. Channel One Russia Worldwide v. Infomir LLC*,
    2017 WL 3671036 (S.D.N.Y. July 18, 2017)...........................................................23

*Junker v. Eddings*,
    396 F.3d 1359 (Fed. Cir. 2005) ...............................................................................19

*Koon Chun Hing Kee Soy & Sauce Factory, Ltd. v. Star Mark Mgmt., Inc.*,
    2009 WL 5185808 (E.D.N.Y. Dec. 23, 2009),
    *aff'd*, 409 F. App'x 389 (2d Cir. 2010)......................................................................6

*Koster v. Perales*,
    903 F.2d 131 (2d Cir. 1990) .....................................................................................20

*Lamaka v. Russian Desserts Inc.*,
    2021 WL 2184870 (E.D.N.Y. May 28, 2021) .............................................................4

*Lamaka v. Russian Desserts Inc.*,
    2021 WL 2188280 (E.D.N.Y. Feb. 12, 2021) .............................................................4

*Louis Vuitton Malletier v. Dooney & Bourke, Inc.*,
    2007 WL 1284013 (S.D.N.Y. Apr. 24, 2007) ...........................................................19

*Luciano v. Olsten Corp.*,
    109 F.3d 111 (2d Cir. 1997) ..............................................................................8, 11

*Lyons P'Ship, L.P. v. D & L Amusement & Entm't*,
    702 F. Supp. 2d 104 (E.D.N.Y. 2010)........................................................................8

*Manhattan Review LLC v. Yun*,
    2019 WL 5722216 (S.D.N.Y. July 1, 2019)..............................................................17

*Metro. Opera Ass'n v. Local 100, Hotel Emp. and Rest. Int'l Union*,
    2004 WL 1943099 (S.D.N.Y. Aug. 27, 2004)...........................................................23

*Millea v. Metro-N. R.R. Co.*,
    658 F.3d 154 (2d Cir. 2011) .......................................................................................2

*Mun. Credit Union v. Queens Auto Mall, Inc.*,
    126 F. Supp. 3d 290 (E.D.N.Y. 2015)......................................................................2, 6

*N. Atl. Operating Co. v. Evergreen Distribs. LLC*,
  2015 WL 13856995 (E.D.N.Y. Jan. 5, 2015) ........................................................ 9, 10, 15, 16

*Nicholson v. Williams*,
  2004 WL 4780498 (E.D.N.Y. Apr. 5, 2004) ........................................................................8

*Nora Beverages, Inc. v. Perrier Grp. of Am., Inc.*,
  269 F.3d 114 (2d Cir. 2001) ................................................................................................21

*NY Fed. of Taxi Driver, Inc. v. Westchester Cty. Taxi and Limousine Comm'n*,
  272 F.3d 154 (2d Cir. 2001) ................................................................................................20

*Pa. v. Del. Valley Citizens Council for Clean Air*,
  483 U.S. 711 (1987) .............................................................................................................19

*Pugach ex rel. U.S. v. M & T Mortg. Corp.*,
  564 F. Supp. 2d 153 (E.D.N.Y. 2008) .................................................................................12

*Reply All Corp. v. Gimlet Media, LLC*,
  843 F. App'x 392 (2d Cir. 2021) .........................................................................................11

*Simmons v. N.Y.C. Transit Auth.*,
  575 F.3d 170 (2d Cir. 2009) ............................................................................................3, 7

*Sub-Zero, Inc. v. Sub Zero NY Refrigeration & Appliances Services, Inc.*,
  2014 WL 1303434 (S.D.N.Y. Apr. 1, 2014) .........................................................................8

*Tokyo Electron Ariz., Inc. v. Discreet Indus. Corp.*,
  215 F.R.D. 60 (E.D.N.Y. 2003) ............................................................................................8

*U.S. v. Potamkin Cadillac Corp.*,
  689 F.2d 379 (2d Cir. 1982) ................................................................................................24

*Union of Orthodox Jewish Congregations of America v. Royal Food Distribs.*
  *Ltd. Liability Co.*,
  665 F. Supp. 2d 434 (S.D.N.Y. 2009) ...................................................................................9

*Viola Sportwear, Inc. v. Mimun*,
  574 F. Supp. 619 (E.D.N.Y. 1983) ................................................................................20, 23

*WBIP, LLC v. Kohler Co.*,
  2014 WL 4471412 (D. Mass. Sept. 8, 2014) ......................................................................10

*Wells Fargo Bank, NA v. Konover*,
  2014 WL 3908596 (D. Conn. Aug. 8, 2014) .......................................................................10

*Worldwide Home Prods. Inc. v. Bed, Bath and Beyond, Inc.*,
  2015 WL 1573325 (S.D.N.Y. Apr. 9, 2015) .......................................................................23

*Yankee Candle Co. v. Bridgewater Candle Co.*,
 140 F. Supp. 2d 111  (D. Mass. 2001) ...................................................................14

**STATUTES**

15 U.S.C. § 1117............................................................................ 1, 18, 23, 24

15 U.S.C. § 1117(a) ...............................................................................23

28 U.S.C. § 1927........................................................................... 1, 18, 23, 24

**OTHER AUTHORITIES**

Frank Gerratana et al., *AIPLA Report of the Economic Survey*,
 AM. INTELLECTUAL PROP. LAW ASS'N 1 (2019)....................................................15

Frank Gerratana et al., *AIPLA Report of the Economic Survey*,
 AM. INTELLECTUAL PROP. LAW ASS'N I-196 (2019)................................................15

## **INTRODUCTION**

On April 5, 2021, Judge William F. Kuntz issued a Decision and Order ("Order") granting Gimlet LLC's ("Gimlet") motion to recover attorneys' fees and costs—pursuant to 15 U.S.C. § 1117 and 28 U.S.C. § 1927—in the total amount of approximately $1.4 million from Plaintiff Reply All Corp. ("RAC") and RAC's counsel. (Dkt. 199.) Gimlet submits here its detailed explanation of attorneys' fees and costs incurred in defending against RAC's litigation.[1]

Throughout this litigation, RAC and its counsel set forth baseless allegations and, as the Court itself found, "used unreasonable litigation tactics that needlessly expanded the proceedings" and "[f]rom the beginning of the underlying litigation, Plaintiff has had a fatally weak claim with no hope for success." (Dkt. 199 at 3.) Despite Gimlet's ownership of a trademark registration for its REPLY ALL mark, RAC's "little to no evidence" supporting its repeated claims of actual confusion, and RAC's inability to prove any lost sales or financial damage resulting from Gimlet's use of REPLY ALL, RAC continued to press forward in this lawsuit for nearly six years at great expense to Gimlet. (*See* Dkt. 199 at 4; Dkt. 200 at 14). RAC's legally flawed and moving-target damages theories, in particular, caused Gimlet to spend far more than should have been required to defend itself and its trademark. Indeed, RAC revealed its "extortionary motives" when it attempted to extract a $60 million windfall from Gimlet following Spotify's acquisition of Gimlet in February 2019. (Dkt. 199 at 6.) This overblown, attorney-driven sum, unsupported by RAC's own expert, is a far cry from the $1.00 per year license that RAC once offered to Gimlet for the asserted trademark. (Dkt. 199 at 6.) The foregoing examples comprise only a few of RAC's and its counsel's actions that inflated the cost and complexity of these proceedings and made this case "exceptional."

---

[1] The relevant factual background and procedural posture of this case are set forth in the Court's Order and will be revisited only as needed to show the reasonableness of the fees and costs Gimlet incurred. (Dkt. 199 at 1-9.)

As a result, this Court awarded Gimlet attorneys' fees and costs in the total amount of approximately $1.4 million. (Dkt. 199 at 9.) Against this backdrop and pursuant to the Order, Gimlet now provides documentation supporting the reasonableness of the fees and costs that it incurred and respectfully requests that (a) RAC be ordered to compensate Gimlet for its reasonable fees and costs from the start of the suit until May 25, 2017 totaling $248,395, (b) both RAC and Balestriere Fariello be jointly and severally liable for the fees incurred from May 26, 2017 onward totaling $1,299,059, except that (c) Balestriere Fariello be exclusively responsible for Gimlet's attorneys' fees incurred related to the threatened state court action totaling $28,365. Gimlet's support for these fees includes the declaration of John Strand and the exhibits filed thereto, as well as the declaration of Kevan Choset, all of which demonstrate the reasonableness of Gimlet's fees.

## **ARGUMENT**

**I.     The Fees Gimlet Incurred for This Litigation Were Reasonable**

In trademark infringement cases, a "presumptively reasonable fee" is calculated using the "lodestar method," which is "the product of a reasonable hourly rate and the reasonable number of hours required by the case." *Mun. Credit Union v. Queens Auto Mall, Inc.*, 126 F. Supp. 3d 290, 299 (E.D.N.Y. 2015) (citing *Millea v. Metro-N. R.R. Co.*, 658 F.3d 154, 166 (2d Cir. 2011)). Courts "have broad discretion" to determine a reasonable hourly rate and a reasonable number of hours. *See Brady v. Wal-Mart Stores, Inc.*, 455 F. Supp. 2d 157, 203 (E.D.N.Y. 2006).

Gimlet seeks an award of attorneys' fees in the amount of $1,575,819 under the lodestar method based on the reasonable time billed and charged at the reasonable hourly rates of Wolf, Greenfield & Sacks, P.C.'s ("Wolf Greenfield") attorneys, paralegals, and support staff.

### **A.     Gimlet's Counsel's Hourly Rates Are Reasonable**

Gimlet's counsel charges reasonable hourly rates that reflect their expertise and align with other intellectual property firms within the New York area. The hourly rates used in making a fee

award should be "what a reasonable, paying client would be willing to pay." *Arbor Hill Concerned Citizens Neighborhood Ass'n v. County of Albany*, 522 F.3d 182, 184 (2d Cir. 2008). Courts determine what constitutes a reasonable hourly rate through application of "the forum rule," which states that "courts should generally use the hourly rates employed in the district in which the reviewing court sits." *Simmons v. N.Y.C. Transit Auth.*, 575 F.3d 170, 174 (2d Cir. 2009).[2] To determine a reasonable hourly rate, courts consider "[rates] prevailing in the [district] for similar services of lawyers of reasonably comparable skill, experience and reputation." *Cruz v. Local Union No. 3 of IBEW*, 34 F.3d 1148, 1159 (2d Cir. 1994) (internal citation omitted).

Courts may also consider the following factors: (1) the time and labor required; (2) the novelty and difficulty of the questions; (3) the level of skill required to perform the legal service properly; (4) the preclusion of employment by the attorney due to acceptance of the case; (5) the attorney's customary hourly rate; (6) whether the fee is fixed or contingent; (7) the time limitations imposed by the client or the circumstances; (8) the amount involved in the case and the results obtained; (9) the experience, reputation, and ability of the attorneys; (10) the "undesirability" of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases. *Arbor Hill*, 493 F.3d at 187 n.3.

### 1. Wolf Greenfield and Its Attorneys' Accomplishments in the Intellectual Property Field Justify Their Hourly Rates

Wolf Greenfield enjoys a strong reputation for its intellectual property expertise and has a renowned litigation team.[3] "Satisfactory evidence" [of reasonable rates] may include affirmations of other attorneys practicing in the same area of law demonstrating the rates of the community; the firm's resume describing the firm's experience and reputation; and a lawyer's resume describing

---

[2] Quotations and citations are omitted from case cites throughout, unless otherwise noted.
[3] Declaration of John L. Strand ("Strand Decl.") ¶ 3.

his skill and experience." *Lamaka v. Russian Desserts Inc.*, 2021 WL 2188280, at *14 (E.D.N.Y. Feb. 12, 2021), *report and recommendation adopted*, 2021 WL 2184870 (E.D.N.Y. May 28, 2021). Vault, which specializes in company and university rankings, lists Wolf Greenfield among the top five intellectual property law boutique firms headquartered on the East Coast and top ten in the country.[4] U.S. News and World Report included Wolf Greenfield in the 2021 national "Best Law Firms" list and recognized Wolf Greenfield as a top tier firm for intellectual property litigation and trademark law.[5] Additionally, the World Trademark Review listed Wolf Greenfield as only one of two law firms in the top "gold" category within the state of Massachusetts.[6] These rankings reflect Wolf Greenfield's substantial trademark and litigation knowledge, track record of generating positive outcomes for its clients, and high standing in the intellectual property community. Accordingly, Wolf Greenfield's billing rates are reasonable for a law firm that has been recognized as one of the top intellectual property firms both at the regional and national level.

Gimlet's attorneys' individual accomplishments reinforce the reasonableness of their billing rates. The lead shareholder responsible for Gimlet's defense, John Strand, has tried intellectual property cases for nearly twenty years and was named to *The Best Lawyers in America* in 2021.[7] Mr. Strand frequently performs lead roles in trademark and patent infringement lawsuits and has won awards for his clients upwards of hundreds of millions of dollars and, in one case, a judgment over $2 billion after an award of ongoing royalties.[8]

---

[4] Strand Decl. ¶¶ 4, 20; Ex. 2, Vault Best Intellectual Property Boutique Law Firms Rankings (2022). All exhibits referenced in this Memorandum are attached to the Declaration of John L. Strand, filed along with this Memorandum.

[5] Strand Decl. ¶¶ 4, 21; Ex. 3, Wolf Greenfield's U.S. News & World Report Law Firm Profile (2021).

[6] Strand Decl. ¶¶ 4, 22; Ex. 4, World Trademark Review 1000: Rankings, Massachusetts (2021). Wolf Greenfield has offices in both New York and Boston.

[7] Strand Decl. ¶¶ 4, 23; Ex. 5, The Best Lawyers in America (2021).

[8] Strand Decl. ¶ 6.

In addition to Mr. Strand, Bryan Conley is a skilled intellectual property litigator with over a decade of experience at the agency, trial, and appellate levels.[9] Mr. Conley began his career in the intellectual property litigation group at the law firm WilmerHale LLP, where he represented multiple Fortune 500 companies.[10] John Welch, originally lead counsel for Gimlet, has represented clients in a number of trademark lawsuits across the country and has handled hundreds of opposition and cancellation proceedings before the Trademark Trial and Appeal Board of the United States Patent and Trademark Office ("USPTO").[11] Mr. Welch has been named to the *World Trademark Review 1000 – The World's Leading Trademark Professionals* from 2012 to 2021 and was selected as a Massachusetts "Super Lawyer" in the field of intellectual property from 2006 to 2021.[12] Additional details regarding the qualifications of each member of the litigation team are discussed in the Strand Declaration and enclosed exhibits.[13] Hence, the billing rates for shareholders and counsel at Wolf Greenfield are justified due to Gimlet's attorneys' caliber and experience within their field and are therefore reasonable.

2.   **The Requested Hourly Rates are Reasonable for This District In Light of Wolf Greenfield's Qualifications and the High Quality of the Work Performed**

Wolf Greenfield's billing rates are appropriate as they are well within the other rates this Court has deemed reasonable and are comparable for intellectual property attorneys of their skill level. Intellectual property litigation merits higher hourly rates than those generally awarded due to the specialized knowledge required. *See, e.g.*, *Gen. Nutrition Inv. Co. v. Gen. Vitamin Ctrs., Inc.*, 817 F. Supp. 2d 66, 76 (E.D.N.Y. 2011); *Koon Chun Hing Kee Soy & Sauce Factory, Ltd. v.*

---

[9] Strand Decl. ¶ 7.

[10] Strand Decl. ¶ 7.

[11] Strand Decl. ¶ 7.

[12] Strand Decl. ¶¶ 9, 24; Ex. 6, World Trademark Review 1000: Rankings, National (2021); Ex. 7, John L. Welch Attorney Profile, Super Lawyers (2021).

[13] *See* Strand Decl. ¶¶ 6-14.

*Star Mark Mgmt., Inc.*, 2009 WL 5185808, at *5 (E.D.N.Y. Dec. 23, 2009), *aff'd*, 409 F. App'x 389 (2d Cir. 2010). In *J.T. Kalmar GmbH v. KLS Lighting Co.*, this Court found that "rates ranging from $650/hour for an experienced partner down to $330 for a junior associate" were "reasonable considering the high quality of the work" performed. *See* 2019 WL 3780091, at *3 (E.D.N.Y. Aug. 12, 2019); *see also Mun. Credit Union*, 126 F. Supp. 3d at 300 (finding $500 per hour to be a reasonable hourly rate for lead counsel in a trademark infringement case and $400 per hour to be reasonable for an associate-type counsel). Here, Wolf Greenfield's billing rates for the principal attorneys representing Gimlet ranged from $835 per hour for an experienced shareholder to $530 for a senior associate, down to $305 for a junior associate during the most active year of the case (2019).[14] These rates are reasonable in light of Wolf Greenfield's trademark expertise and the "high quality of the work performed."

### 3. Wolf Greenfield's Rates Are Comparable to Prevailing Rates for Similar Services in the Southern District of New York and District of Massachusetts

Gimlet's attorneys' billing rates are reasonable for this district, and they are also within range of hourly rates awarded by the Southern District of New York and the District of Massachusetts, where Wolf Greenfield's offices are located. "[A] district court may use an out-of-district hourly rate—or some rate in between the out-of-district rate sought and the rates charged by local attorneys—in calculating the presumptively reasonable fee if it is clear that a reasonable, paying client would have paid those higher rates." *Arbor Hill*, 522 F.3d at 191. Applying out-of-district rates is permitted where a litigant establishes counsel's "special expertise in litigating the particular type of case" as well as a "particularized showing that the use of in-district counsel would produce a substantially inferior result," such as "by establishing that no in-district counsel

---

[14] Strand Decl. ¶ 19; Ex. 1, Summary of Wolf Greenfield Billing Rates for the Years 2015-2021.

possessed such expertise." *Simmons*, 575 F.3d at 175. Due to Wolf Greenfield's "special expertise" in the intellectual property field (*see* Section I.A.1), the lack of top intellectual property firms within the Eastern District, and the fact that Gimlet paid its legal bills, "it is clear that a reasonable, paying client" would have paid Wolf Greenfield's rates. This warrants a departure from the forum rule, and out-of-district rates should be considered in assessing the reasonableness of Gimlet's attorneys' fees.

The vast majority of the top intellectual property law firms in New York City are in the Southern rather than Eastern District. Not a single one of the top twenty intellectual property boutique firms (according to the Vault rankings) have a New York office outside Manhattan.[15] All of the law firms listed by the World Trademark Review as top firms for trademark enforcement and litigation in the New York area are in Manhattan or Westchester and do not have any offices in the Eastern District.[16] Therefore, Gimlet's decision to hire out-of-district counsel was reasonable given that the top intellectual property firms are based outside the Eastern District.[17]

This Court has taken Southern District rates into account in determining reasonable attorneys' fees in past intellectual property cases. *See, e.g.*, *Lyons P'Ship, L.P. v. D & L Amusement & Entm't*, 702 F. Supp. 2d 104, 121 (E.D.N.Y. 2010). "Although attorney rates are generally evaluated in comparison to those charged in the district in which the court sits, courts in the Eastern District of New York often use rates awarded across the river, in the Southern District of New York, as a basis for comparison." *Id.* at 120 (citing *Luciano v. Olsten Corp.*, 109 F.3d 111, 116 (2d Cir. 1997); *Nicholson v. Williams*, 2004 WL 4780498, at *10–11 (E.D.N.Y. Apr. 5, 2004);

---

[15] Strand Decl. ¶ 20; Ex. 2, Vault Best Intellectual Property Boutique Law Firms Rankings (2022).

[16] Strand Decl. ¶ 26; Ex. 8, World Trademark Review 1000: Rankings, New York – Firms: Enforcement & Litigation (2021).

[17] *See id.*; Declaration of Kevan Choset in Support of Gimlet's Motion for Attorneys' Fees ("Choset Decl.") ¶ 11.

*Tokyo Electron Ariz., Inc. v. Discreet Indus. Corp.*, 215 F.R.D. 60, 63 (E.D.N.Y. 2003)). Here, Wolf Greenfield's billing rates are on par with other rates that the Southern District has held as reasonable.

In *Sub-Zero, Inc. v. Sub Zero NY Refrigeration & Appliances Services, Inc.*, the court held that hourly rates of $785 for a senior partner, $485 for another partner, and $200 for a paralegal (equivalent to, respectively, $899, $555, and $229 in 2021 at inflation-adjusted rates) were appropriate hourly rates in a trademark infringement action. 2014 WL 1303434, at *9 (S.D.N.Y. Apr. 1, 2014).[18] Additionally, in *Barclays Capital Inc. v. Theflyonthewall.com*, the court found that $838 ($1044 in 2021 when adjusted for inflation) was a reasonable hourly rate for a senior partner in a copyright infringement action. *See* 2010 WL 2640095, at *3 (S.D.N.Y. June 30, 2010); Decl. of Marks, *Barclays Capital Inc. v. Theflyonthewall.com*, No. 06 Civ. 4908, ¶ 8 (Apr. 9, 2010); *see also GAKM Res. LLC v. Jaylyn Sales Inc.*, 2009 WL 2150891, at *8 (S.D.N.Y. July 20, 2009) (finding that hourly rates in a trademark infringement case of $525-650 for partners, $600 for counsel, and $195 for a paralegal—respectively, $662-820, $756, and $246 in 2021 when adjusted for inflation—were reasonable); *Union of Orthodox Jewish Congregations of America v. Royal Food Distribs. Ltd. Liability Co.*, 665 F. Supp. 2d 434, 437 (S.D.N.Y. 2009) (holding that hourly rates of $735 for a partner, $445 for an associate, and $275 for another associate—respectively, $923, $559, and $345 in 2021 when adjusted for inflation—were reasonable for trademark litigators). Thus, Wolf Greenfield's billing rates are reasonable when compared to the approved rates in the foregoing cases.[19]

---

[18] Strand Decl. ¶ 17. All of the inflation-adjusted rates discussed herein were calculated using the U.S. Bureau of Labor Statistics' Inflation Calculator. *See Consumer Price Index Inflation Calculator*, U.S. BUREAU OF LABOR STATISTICS (last visited Aug. 4, 2021).

[19] Strand Decl. ¶ 19; Ex. 1, Summary of Worked Hours and Wolf Greenfield Billing Rates for the Years 2015-2021.

Gimlet's prior dealings with Wolf Greenfield[20] further justified the decision to hire out-of-district counsel, and District of Massachusetts rates should apply. A departure from the forum rule may also be warranted where a litigant has a preexisting relationship with out-of-district counsel. *See N. Atl. Operating Co. v. Evergreen Distribs. LLC*, 2015 WL 13856995, at *20 (E.D.N.Y. Jan. 5, 2015). Gimlet hired Wolf Greenfield as trademark counsel in February 2015, over six months before Plaintiff filed its complaint.[21] During this time frame, Wolf Greenfield attorneys (including Douglas Wolf, Chair of the Trademark & Copyright Group) assisted Gimlet with the trademark clearance process, USPTO filings, and trademark-related contentious matters.[22] Mr. Wolf responded to the cease-and-desist letter that Plaintiff's CEO, Zachary Abramowitz, sent to Gimlet in March 2015.[23]

Gimlet was reasonable to hire Wolf Greenfield in the present case because of the positive working relationship it had with the firm. *See N. Atl. Operating Co.*, 2015 WL 13856995, at *20. Wolf Greenfield's familiarity with Gimlet's business workings, trademark portfolio, and the facts underlying Plaintiff's infringement claim made Wolf Greenfield uniquely suited for retention in these proceedings and was likely to result in greater efficiency. *See Wells Fargo Bank, NA v. Konover*, 2014 WL 3908596, at *8 (D. Conn. Aug. 8, 2014). These qualifications could not be replicated at any other law firm, let alone a law firm within the Eastern District.

Because the attorneys primarily responsible for Gimlet's defense are based in Wolf Greenfield's Boston office, this Court may also apply District of Massachusetts rates. In *Accusoft Corp. v. Quest Diagnostics, Inc.*, the court found that $750 ($859 in 2021 when adjusted for

---

[20] Strand Decl. ¶ 4.

[21] Strand Decl. ¶ 4.

[22] Strand Decl. ¶ 4.

[23] Strand Decl. ¶ 4; Ex. 16, Letter from Douglas Wolf to Zachary Abramowitz (Mar. 17, 2015).

inflation) was a reasonable hourly rate for a senior attorney who specialized in intellectual property litigation. *See* 2014 WL 1393749, at *2 (D. Mass. Apr. 7, 2014). Likewise, in *WBIP, LLC v. Kohler Co.*, the court held that $600-735 for a partner, $580-650 for counsel, and $345-425 for an associate (respectively $684-838, $662-741, and $393-485 in 2021 when adjusted for inflation) were reasonable hourly rates for experienced intellectual property litigators. 2014 WL 4471412, at *2 (D. Mass. Sept. 8, 2014). Wolf Greenfield's hourly rates of $835 for an experienced shareholder, $530 for a senior associate, and $305 for a junior associate in 2019 are commensurate with those previously approved by the District of Massachusetts. Accordingly, Gimlet submits that its attorneys' hourly rates are reasonable when compared to those charged by equally experienced intellectual property litigators in either Boston or the Southern District.

### 4.  Wolf Greenfield's Success in the Case and Gimlet's Paying of Its Invoices Further Attest to the Reasonableness of the Requested Hourly Rates

Wolf Greenfield's hourly rates are reasonable in light of the success its attorneys achieved in the case. Courts may take into account "case-specific variables that [the Second Circuit] and other courts have identified as relevant," including "the attorney's experience and expertise, the novelty and complexity of the issues presented, and the overall success achieved in the case." *Brady*, 455 F. Supp. 2d at 204 (citing *Luciano*, 109 F.3d at 116). "The overall success of the case is an important benchmark against which any fee award must be assessed." *Brady*, 455 F. Supp. 2d at 215.

Here, Wolf Greenfield vigorously represented its client, resulting in a notable success for Gimlet. The Court granted Gimlet's summary judgment motion on liability and concluded that "there is no likelihood of confusion." (Dkt. 181.) In its opinion, the Court concluded that each of the *Polaroid* factors weighed in Gimlet's favor, or at best for Plaintiff, was neutral. (Dkt. 181.) Plaintiff appealed the decision, and Wolf Greenfield continued to represent Gimlet at the appellate

level. The Second Circuit affirmed Judge Kuntz's decision in full, holding that "no reasonable jury could conclude that RAC's customers are likely to be confused by Gimlet's use of its 'REPLY ALL' mark," for "[n]ot a single factor favors RAC." *Reply All Corp. v. Gimlet Media, LLC*, 843 F. App'x 392, 400 (2d Cir. 2021).

Following the success on appeal, the Court granted Gimlet's motion to recover attorneys' fees in a total amount of approximately $1.4 million from Plaintiff and Balestriere Fariello. (Dkt. 204.) Although RAC and its counsel insisted that Gimlet's potential exposure was $60 million in damages, the case ultimately concluded with summary judgment and Second Circuit decisions in Gimlet's favor and a $1.4 million attorneys' fee award—a complete win for Gimlet. This result might not have been possible but-for Wolf Greenfield's trademark litigation expertise and significant efforts throughout the case. Accordingly, Wolf Greenfield's billing rates are reasonable in view of the overall success achieved in the case.

The fact that Gimlet agreed to the fee arrangement with Wolf Greenfield and has paid its legal bills to date (with the exception of recent invoices sent within the past two months that will be paid in the near future) underscores the reasonableness of Wolf Greenfield's hourly rates. The actual fee arrangement between a party and its counsel is relevant evidence of what constitutes a reasonable fee. *Pugach ex rel. U.S. v. M & T Mortg. Corp.*, 564 F. Supp. 2d 153, 157 (E.D.N.Y. 2008); *see also Bleecker Charles Co. v. 350 Bleecker St. Apartment Corp.*, 212 F. Supp. 2d 226, 230 (S.D.N.Y. 2002) ("As numerous courts have recognized, negotiation and payment of fees by sophisticated clients are solid evidence of their reasonableness in the market. . . ."). Here, Gimlet is a subsidiary of Spotify, one of the world's largest audio streaming subscription provider with over 350 million active users, and thus qualifies as a "sophisticated client."[24] Gimlet and Spotify would not have agreed to pay hourly rates above prevailing market rates for similar services

---

[24] Choset Decl. ¶ 2.

provided by equally skilled intellectual property attorneys.[25] And Spotify has engaged numerous firms throughout the country and in New York and finds the rates Wolf Greenfield charged Gimlet in this action to be reasonable.[26]

### B.    The Time Gimlet's Counsel Expended Was Reasonable

The amount of time that Wolf Greenfield spent on Gimlet's defense was reasonable and necessary to obtain a winning result. In evaluating whether attorneys' hours expended were reasonable, the question is "whether, at the time the work was performed, a reasonable attorney would have engaged in similar time expenditures." *Grant v. Martinez*, 973 F.2d 96, 99 (2d Cir. 1992). A court should consider "its own familiarity with the case and its experience with the case and its experience generally as well as to the evidentiary submissions and arguments of the parties." *Clarke v. Frank*, 960 F.2d 1146, 1153 (2d Cir. 1992).

Furthermore, "applications for attorney's fees must be supported by contemporaneous time records specifying relevant dates, time spent, and work done." *Gen. Nutrition Inv. Co.*, 817 F. Supp. 2d at 75 n.2. The Strand Declaration contains detailed information concerning Wolf Greenfield's billing practices and attaches several exhibits including itemized billing records identifying the date worked, time billed, individual or "timekeeper" performing the work, hourly rate, a "narrative" or description of the work performed, and the amount of time spent on each task.[27] These billing records (invoices) contain a monthly summary of the daily time records maintained by attorneys and paralegals at Wolf Greenfield.[28] Additionally, Wolf Greenfield's finance department has prepared spreadsheets reflecting: (a) the aggregate amount of attorneys' fees and costs Gimlet has paid throughout this litigation; (b) the courtesy discounts and write-offs that occurred throughout the case; (c) specific breakdowns of various time periods (capturing the

---

[25] Choset Decl. ¶ 8.
[26] Choset Decl. ¶ 9.
[27] Strand Decl. ¶ 27; Ex. 9, Gimlet Invoices 15091054-20082206.
[28] Strand Decl. ¶ 9.

total fees amount predating and following Mr. John Balestriere's entering a Notice of Appearance and from the Court's summary judgment decision to date); (d) a list of each timekeeper's billing rate from 2015-2021; and (e) the total number of hours that each timekeeper dedicated to the case.[29] These materials provide ample support for Gimlet's fee application and attest to the reasonableness of the hours spent on the case.

Wolf Greenfield's hours expended on the case were reasonable in view of RAC and its counsel's conduct that unnecessarily multiplied the proceedings and forced Gimlet to dedicate considerable resources to the lawsuit. The fact that the lawsuit has spanned nearly six years justifies the total number of hours spent on the case, which would have concluded far earlier but-for RAC's and its counsel's egregious conduct. Both RAC and its counsel proceeded in bad faith by pursuing objectively unreasonable and frivolous claims and attempting to extort an unreasonable settlement. (Dkt. 199 at 2, 4, 8.) As found by this Court, these actions:

> [U]nduly multiplied the proceedings and forced Gimlet to expend significant resources, for example, by: hiring its own damages experts to rebut Plaintiff's baseless claims, *see, e.g.*, ECF No. 95, Ex. WW, 3/15/17 Weir Rpt.; Ex. 8, 9/13/19 Weir Rpt., filing two summary judgment motions regarding damages, *see* ECF Nos. 89, 157, filing a *Daubert* motion to preclude the testimony of Plaintiff's expert relating to the reasonable royalties, ECF No 157 at 29–33, and filing a motion in *limine* to exclude damage contentions and related evidence not disclosed during discovery or the Pretrial Order, ECF No 175 at 13–15.

(Dkt. 199 at 8.) Thus, RAC and its counsel's unreasonable litigation tactics, such as advancing baseless damages theories, forced Wolf Greenfield to expend more hours than typically required for a trademark infringement lawsuit.

---

[29] Strand Decl. ¶ 28; Ex. 10, Reply All Corp. v. Gimlet Media Inc. Litigation Summary Spreadsheet.; Ex. 12, Reply All Corp. v. Gimlet Media Inc. Litigation Summary Spreadsheet (August 24, 2015-May 25, 2017); Ex. 11, Reply All Corp. v. Gimlet Media Inc. Litigation Summary Spreadsheet (May 26, 2017-February 11, 2020); Ex. 13, Reply All Corp. v. Gimlet Media Inc. Litigation Summary Spreadsheet (February 12, 2020-June 30, 2021); Ex. 1, Summary of Worked Hours and Wolf Greenfield Billing Rates for the Years 2015-2021.

Moreover, following the Spotify acquisition, RAC and its counsel alleged that Gimlet was liable for the exorbitant sum of $60 million in damages. (*See* Dkt. 156 at 2.) If enjoined, Gimlet would have had to rename one of its most successful podcasts and lost all of the goodwill associated with the REPLY ALL trademark. (*See* Dkt. 156 at 6-7.) Given that the stakes in this litigation were high, it is understandable that Wolf Greenfield devoted a substantial amount of time to Gimlet's defense to defeat RAC's and its counsel's attempt to extract a windfall settlement. *See Yankee Candle Co. v. Bridgewater Candle Co.*, 140 F. Supp. 2d 111, 124 (D. Mass. 2001), *abrogated on other grounds by InvesSys, Inc. v. McGraw-Hill Cos.*, 369 F.3d 16, 24 (1st Cir. 2004) (holding that a fee request emerged "as more than fair" in part because "[t]hough plaintiff's claim was weak, the stakes in [the] matter were high"; thus, it was "understandable that Bridgewater responded vigorously"). Gimlet recognized that RAC's excessive damages claim was frivolous, but even a slight chance that RAC could succeed was highly concerning and warranted spending additional resources on the case. Hence, Wolf Greenfield expended a reasonable amount of hours throughout this litigation considering RAC and its counsel's extortionary attempt to secure a settlement or damages award of up to $60 million.

### 1.    Wolf Greenfield's Invoices Attest to Its Attorneys' Efficiency

Gimlet's incurring $1,575,819 over the course of six years was reasonable when considering the average cost of comparable trademark infringement litigation. The American Intellectual Property Law Association ("AIPLA") conducts an annual economic survey that "examines the economic aspects of intellectual property law practice, including individual billing rates and typical charges for representative IP law services."[30] The survey found that the average cost of a trademark infringement lawsuit where there was greater than $25 million at stake

---

[30] Frank Gerratana et al., *AIPLA Report of the Economic Survey*, AM. INTELLECTUAL PROP. LAW ASS'N 1 (2019).

including initial case management, discovery, and motions was approximately $1.447 million and that the median cost was $1.6 million.[31] The average cost for such cases was approximately $3.524 million and the median cost was $2.75 million for lawsuits that reached the pre-trial, trial, post-trial, and appeal stages.[32] Here, Gimlet's requested attorneys' fees of $1,575,819 encompass time spent on pre-trial work as well as its fee application. Accordingly, Gimlet's total fee request is reasonable because it falls between the mean and median figures for trademark infringement lawsuits that concluded at an earlier stage than the present case.

### 2. Wolf Greenfield Appropriately Allocated Tasks Among Shareholders, Counsel, Associates, and Staff to Minimize Costs

Wolf Greenfield's division of work among shareholders, counsel, associates, and staff further demonstrates the reasonableness of the hours dedicated to the case. Assigning a significant portion of work to individuals with lower billing rates, such as associates and paralegals, serves as evidence of the reasonable hours expended by counsel. *See N. Atl. Operating Co.*, 2015 WL 13856995, at *21. In *N. Atl. Operating Co.*, the court found that "the billed hours were, for the most part, reasonable" largely because "[t]he division of labor reflects an effort to minimize costs by having [a partner] review the associates' drafting of litigation documents, and by having paralegals draft the most routine litigation documents." *Id.*

Likewise, Wolf Greenfield's allocation of work between attorneys and staff at various experience levels ensured maximum cost efficiency for Gimlet. As in *N. Atl. Operating Co.*, Gimlet's lead counsel (initially John Welch and, beginning in late 2018, John Strand) often directed associates to draft litigation documents, had paralegals draft non-substantive documents, and would then review and finalize the completed drafts.[33] Gimlet's spreadsheet listing the total

---

[31] Frank Gerratana et al., *AIPLA Report of the Economic Survey*, Am. Intellectual Prop. Law Ass'n I-196 (2019).

[32] Frank Gerratana et al., *AIPLA Report of the Economic Survey*, Am. Intellectual Prop. Law Ass'n I-196 (2019).

[33] Strand Decl. ¶ 15.

hours billed by each timekeeper attests to Wolf Greenfield's billing efficiency.[34] Stephanie Stella, a former senior associate at Wolf Greenfield, billed the most time of anyone on Gimlet's litigation team, billing a total of nearly 1770 hours over the course of four years (49% of the total hours billed on the case).[35] Associates conducted the most amount of work on the case by far (60% of the total worked hours), followed by shareholders (20% of the total worked hours), staff (11% of the total worked hours), and, finally, counsel (9% of the total worked hours).[36] Hence, the fact that shareholders and counsel with higher billing rates only accounted for 29% of the total worked hours shows that Wolf Greenfield's billed hours were reasonable.

### 3.   Hours Expended on Collecting Attorneys' Fees

Gimlet is entitled to recoup its attorneys' fees related to its fee application. "The Second Circuit has consistently held fee awards for litigating an initial fee application should be granted in cases involving fee-shifting statutes." *See Diaz v. Paragon Motors of Woodside, Inc.*, 2008 WL 2004001, at *7 (E.D.N.Y. May 7, 2008); *see also Manhattan Review LLC v. Yun*, 2019 WL 5722216, at *4 (S.D.N.Y. July 1, 2019) (quoting *Gagne v. Maher*, 594 F.2d 336, 344 (2d Cir. 1979)) ("If an attorney is required to expend time litigating his fee claim, yet may not be compensated for that time, the attorney's effective rate for all the hours expended on the case will be correspondingly decreased . . . . Such a result would not comport with the purpose behind most statutory fee authorizations."). As with the time spent leading up to the summary judgment decision, Gimlet's hours expended on its fee application are reasonable. To date, Wolf Greenfield has billed a total of $197,508 in connection with Gimlet's fee application.[37] However, Wolf

---

[34] *See* Strand Decl. ¶ 19; Ex. 1, Summary of Worked Hours and Wolf Greenfield Billing Rates for the Years 2015-2021.

[35] Strand Decl. ¶ 19; Ex. 1, Summary of Worked Hours and Wolf Greenfield Billing Rates for the Years 2015-2021.

[36] Strand Decl. ¶ 19; Ex. 1, Summary of Worked Hours and Wolf Greenfield Billing Rates for the Years 2015-2021. The percentages set forth above are approximate.

[37] Strand Decl. ¶ 31; Ex. 13, Reply All Corp. v. Gimlet Media Inc. Litigation Summary Spreadsheet (February 12, 2020-June 30, 2021)

Greenfield has extended Gimlet a significant discount and has charged Gimlet only $95,321 for fees incurred in collecting Gimlet's attorneys' fees.[38] Gimlet has also not requested attorneys' fees that were incurred after June 2021, the last month that was invoiced. Thus, given that Wolf Greenfield has discounted or written off nearly half of the relevant charges, the $95,321 requested for Gimlet's attorneys' fees claim is reasonable.

### C.      Further Evidence of Reasonableness

Although the Court awarded Gimlet both attorneys' fees and costs in its May 13, 2021 order, Gimlet has exercised great restraint in its decision not to seek the full amount of either the attorneys' fees or costs it is entitled to. (*See* Dkt. 204.) First, Gimlet is not seeking to recover the additional $125,618 in costs incurred above the $13,585 in taxable costs it is seeking to recover between 2015 and 2021.[39] Second, Gimlet omitted Wolf Greenfield's appellate work from its request for attorneys' fees. Including the appellate fees would have increased RAC and its counsel's financial exposure by $154,094.[40] Finally, Gimlet could have but did not request attorneys' fees in excess of the amount Gimlet ultimately paid in light of the various discounts and deductions that Wolf Greenfield extended—a total of $263,315. *See* Section I.A.3(b). Hence, Gimlet's fee request of $1,575,819 is reasonable given Gimlet's decision not to seek reimbursement for the considerable additional sum of $543,027.

#### 1.      Gimlet Has Not Requested Reimbursement for All of the Costs and Appellate Fees to Which It Is Entitled

As stated above, Gimlet incurred $139,203 in costs during the course of this litigation and incurred $154,094 in fees defending the appeal it is not seeking to recover. The Court specifically granted Gimlet's motion to "recovery attorneys' fees *and costs*—pursuant to 15 U.S.C. § 1117 and

---

[38] Strand Decl. ¶ 17; Ex. 13, Reply All Corp. v. Gimlet Media Inc. Litigation Summary Spreadsheet (February 12, 2020-June 30, 2021).

[39] Strand Decl. ¶ 28; Ex. 10, Reply All Corp. v. Gimlet Media Inc. Litigation Summary Spreadsheet.

[40] Strand Decl. ¶ 32; Ex. 14, Reply All Corp. v. Gimlet Media, LLC Appeal Summary Spreadsheet.

28 U.S.C. § 1927—in the total amount of approximately $1,400,000 from Plaintiff." (Dkt. 204 (emphasis added).) Additionally, Gimlet may recover its full costs as the prevailing party in a trademark infringement lawsuit. *See GAKM*, 2009 WL 2150891, at *10 (noting that filing fees, research fees, service fees, and travel expenses "are the types of routine costs awarded to prevailing parties in trademark and copyright infringement actions"). Nonetheless, Gimlet claims nothing for costs beyond the $13,585 in fees for transcripts necessarily obtained for use in the case (i.e., its taxable costs), $125,618 less than what Gimlet could have sought. (*See* Dkt. 186.)

Likewise, Gimlet limited the total potential fee award by forgoing appellate fees. Prevailing parties may recover attorneys' fees for appellate work where the appeal is "lacking in merit" or "groundless, unreasonable, vexatious or pursued in bad faith." *Elecs. Corp. of Am. v. Republic Indus., Inc.*, 507 F.2d 409, 411 (1st Cir. 1974); *Indep. Living Aids, Inc. v. Maxi-Aids, Inc.*, 303 F. Supp. 2d 327, 332 (E.D.N.Y. 2004). Gimlet could have asked the Second Circuit to award attorneys' fees arising from the appeal, a total of $154,094. Given both this Court's and the Second Circuit's conclusions that not a single *Polaroid* factor favored Plaintiff, Gimlet would have had no difficulty establishing that the appeal was groundless and unreasonable. Thus, Gimlet's request for $1,575,819 in attorneys' fees is fair and reasonable, especially in light of its decision not to seek compensation for $154,094 in appellate fees.

### 2. The Discounts and Fee Reductions Reflected on Wolf Greenfield's Invoices Highlight the Reasonableness of Gimlet's Request for Attorneys' Fees.

Throughout the case, Wolf Greenfield wrote off a significant amount of its attorneys' fees and costs on its own volition and provided a 15% courtesy discount beginning in 2021.[41] Such discounts and fee reductions further demonstrate the reasonableness of the requested fees.

---

[41] Strand Decl. ¶ 17.

It is fully within the Court's discretion to award the full amount of fees that would have been incurred in the absence of write offs provided as an accommodation to what began as a startup company hauled into court on a case that should never have been filed. *See Junker v. Eddings*, 396 F.3d 1359, 1365 (Fed. Cir. 2005) ("Although the amount the client paid the attorney is one factor for the court to consider in determining a reasonable fee, it does not establish an absolute ceiling."). The enhancement of the lodestar can be justified in exceptional circumstances. *See Pa. v. Del. Valley Citizens Council for Clean Air*, 483 U.S. 711, 728 (1987); *see also Louis Vuitton Malletier v. Dooney & Bourke, Inc.*, 2007 WL 1284013, at *2 (S.D.N.Y. Apr. 24, 2007) ("Although the lodestar figure is the presumptively appropriate amount to award, there may be circumstances that justify an adjustment."). For example, in *Getty Petroleum Corp. v. Bartco Petroleum Corp.*, the court held that the attorney fee award should not reflect the discounts offered to clients because the defendants acted "willfully" and should not receive a windfall as "wrongdoers." 858 F.2d 103, 114 (2d Cir. 1988). Thus, Gimlet could have requested attorneys' fees based on Wolf Greenfield's usual billing practices but did not.

The fact that Gimlet is not seeking to recover the significant amount of fees that were written off or not billed throughout the litigation again demonstrates that the requested amounts are reasonable. From 2015 to date, the total amounts of attorneys' fees and costs reflected on Wolf Greenfield's invoices were, respectively, $1,840,107 and $139,203.[42] The monthly deductions and courtesy discount amounted to a total of $220,153.[43] In addition, Wolf Greenfield wrote $2,782 off of Gimlet's total bill in 2019 and $40,380 in 2020.[44] The combined cost of the annual and periodic discounts was $263,315—***nearly 17% of the requested fee amount***. Although Wolf Greenfield could have requested over $1.95 million in compensation, it provided a significant

---

[42] Strand Decl. ¶ 28; Ex. 10, Reply All Corp. v. Gimlet Media Inc. Litigation Summary Spreadsheet.
[43] Strand Decl. ¶ 28; Ex. 10, Reply All Corp. v. Gimlet Media Inc. Litigation Summary Spreadsheet.
[44] Strand Decl. ¶ 28; Ex. 10, Reply All Corp. v. Gimlet Media Inc. Litigation Summary Spreadsheet.

discount to Gimlet as a gesture of goodwill and in light of the growing expense of a lawsuit that has spanned nearly six years.[45] Thus, Gimlet respectfully requests that the Court not reduce the fee award due to Gimlet's savings and Wolf Greenfield's voluntary reductions predating the award of attorneys' fees.

## II.    Apportionment of Fees Between RAC and Its Counsel

In determining how to allocate fee liability, courts consider a variety of factors, including the relative culpability of the parties. *See Koster v. Perales*, 903 F.2d 131, 139 (2d Cir. 1990), *abrogated on other grounds by NY Fed. of Taxi Driver, Inc. v. Westchester Cty. Taxi and Limousine Comm'n*, 272 F.3d 154, 158-59 (2d Cir. 2001). The court may allocate the fee award between the responsible parties, setting the percentage for which each is liable where the claims are separate and distinct or where culpability is significantly unequal. *Id*. Alternatively, the court may hold the parties jointly and severally liable for the fee award. *See Viola Sportwear, Inc. v. Mimun*, 574 F. Supp. 619, 621 (E.D.N.Y. 1983).

Pursuant to this standard, Gimlet submits the following fee allocation between RAC and Balestriere Fariello: (a) RAC should be exclusively responsible for the attorneys' fees incurred during the time it was represented by prior counsel, Darren Heitner (August 24, 2015 to May 25, 2017; (b) RAC and its counsel should be jointly and severally liable for the attorneys' fees incurred from the time John G. Balestriere entered a Notice of Appearance (May 26, 2017) (*see* Dkt. 59) with the exception of fees incurred related to the threatened state court action; and (c) Balestriere Fariello should be exclusively responsible for the attorneys' fees incurred related to the threatened state court action.

---

[45] Strand Decl. ¶ 18.

A.    **RAC Should Be Exclusively Responsible for Fees Incurred from August 24, 2015 to May 25, 2017 and Its Counsel Should Be Responsible for Fees Related to the Threatened State Court Action**

RAC should bear the sole responsibility for attorneys' fees incurred between August 24, 2015 to May 25, 2017. Gimlet paid $248,395 in attorneys' fees during this period.[46] During this time, RAC pressed forward with a "frivolous" and "objectively unreasonable action in bad faith." (Dkt. 199 at 2, 6.) As found by this Court, RAC "suffered no actual damages, the differences between the parties' brands were clear, and the competitive distance between their enterprises significant." (Dkt. 199 at 4.) Additionally, and as the Court acknowledged, RAC's REPLYALL mark is suggestive and "lacks commercial strength" due to RAC's "lack of sales, marketing expenditures, and general absence from the marketplace." (Dkt. 181 at 7.) This means that RAC's mark is entitled to a narrower scope of protection than would be the case with a stronger mark. *See generally Nora Beverages, Inc. v. Perrier Grp. of Am., Inc.*, 269 F.3d 114, 123 (2d Cir. 2001). Despite these obvious deficiencies in its claim and lack of any tangible damage resulting from Gimlet's use of its registered REPLY ALL mark, RAC continued to litigate the case in an aggressive manner, draining considerable resources from Gimlet. For these reasons, RAC should reimburse Gimlet for its attorneys' fees that were incurred prior to RAC's hiring Balestriere Fariello. Gimlet acknowledges that Balestriere Fariello should not be required to pay fees that were incurred before its involvement in the case.

Balestriere Fariello should bear sole responsibility for the approximately $28,365 in fees that were incurred related to the threatened state court lawsuit.[47] Following Spotify's purchase of Gimlet for approximately $200 million, Balestriere Fariello attempted to gain additional leverage to extract a windfall settlement from Gimlet during settlement negotiations (*see* Dkt. 200 at 6) by sending Wolf Greenfield multiple draft complaints containing baseless allegations against 17

---

[46] Strand Decl. ¶ 29; Ex. 12, Reply All Corp. v. Gimlet Media Inc. Litigation Summary Spreadsheet (August 24, 2015-May 25, 2017).

[47] Strand Decl. ¶ 33; Ex. 15, Spreadsheet Containing Time Entries Related to Threatened State Court Action.

- 21 -

defendants, including several individuals. (Dkt. 169, Ex. A; Dkt. 200, Ex. 1.) RAC's counsel even admitted in RAC's opposition that its goal in presenting Wolf Greenfield with the draft complaints was "to achieve a global settlement between the parties." (Opp. at 3.) The draft complaints sent by Balestriere Fariello set forth unsubstantiated spoliation claims that lacked any legal or factual support (of which RAC was likely not even aware), accusations that Spotify's valuation firm purposefully undervalued Gimlet's REPLY ALL mark (same), and claims that duplicated RAC's requested relief in the present case. (Dkt. 169, Ex. A; Dkt. 200, Ex. 1.) Further, RAC and its counsel improperly used Gimlet and Spotify's confidential information to draft the complaint in direct violation of the Protective Order. (Dkt. 177 at 10:20-22.) Because Balestriere Fariello knew or should have known that these claims were meritless yet chose to pursue them for settlement leverage, Balestriere Fariello should be liable for Gimlet's attorneys' fees related to the draft state court complaints pursuant to 28 U.S.C. § 1927.

### B. Joint and Several Liability is Appropriate for the Majority of Gimlet's Attorneys' Fees

RAC and its counsel should be jointly and severally liable for Gimlet's attorneys' fees excluding the categories above because they are equally responsible for the wrongful conduct underlying the fee award. "Joint and several sanctions against parties and their attorneys 'are available when the court finds both to be equally at fault,' and are clearly appropriate where 'the sanctionable conduct is a "coordinated effort" of counsel and party.'" *Joint Stock Co. Channel One Russia Worldwide v. Infomir LLC*, 2017 WL 3671036, at *20 (S.D.N.Y. July 18, 2017); *Metro. Opera Ass'n v. Local 100, Hotel Emp. and Rest. Int'l Union*, 2004 WL 1943099, at *25 (S.D.N.Y. Aug. 27, 2004)). Courts may impose joint and several liability on litigants and their attorneys pursuant to 15 U.S.C. § 1117 and 28 U.S.C. § 1927. *See Viola Sportwear*, 574 F. Supp. at 621; *see also Worldwide Home Prods. Inc. v. Bed, Bath and Beyond, Inc.*, 2015 WL 1573325, at *1

(S.D.N.Y. Apr. 9, 2015) (holding a patent litigant and its attorney jointly and severally liable for attorneys' fees under 35 U.S.C. § 285 and 28 U.S.C. § 1927).

Joint and several liability is warranted because RAC and its counsel are responsible for the same core conduct justifying the fee award. The Court held that RAC was liable for attorneys' fees under 15 U.S.C. § 1117(a) for two principal reasons: (1) that "Plaintiff's claim was frivolous and objectively unreasonable" (*see* Dkt. 199 at 2-4) and (2) that "Plaintiff acted in bad faith, intending to extort an unreasonable settlement." (*See* Dkt. 199 at 4-6.) Regarding the second factor, the Court held that RAC's "advanced multiple baseless damages theories," such as a disgorgement of profits theory, reasonable royalty rate, and a damages theory "that that its own expert conceded had no support in the case law." (*See* Dkt. 199 at 4-6.)

These are the ***same actions*** that the Court held Balestriere Fariello accountable for pursuant to 28 U.S.C. § 1927. The court stated, "For similar reasons as noted above, the Court finds that Plaintiff's counsel proceeded in bad faith by bringing objectively unreasonable and frivolous claims, *supra* § I.i, and by attempting to extort a nuisance settlement from Defendant by advancing unsubstantiated and legally incognizable damages theories, *supra* § I.ii." (Dkt. 199 at 8.) Hence, RAC and its counsel are at fault for the same wrongful conduct and engaged in a coordinated effort to extort a windfall settlement. As a result, RAC and its counsel should be jointly and severally liable for $1,299,059—the fees that were incurred from May 26, 2017 to date less the attorneys' fees related to the threatened state court action. RAC and its counsel are in the best position between them to determine who caused these unreasonable actions to be taken. *See U.S. v. Potamkin Cadillac Corp.*, 689 F.2d 379, 382 (2d Cir. 1982).

## CONCLUSION

For the foregoing reasons, Gimlet respectfully requests the Court award it its attorneys' fees pursuant to 15 U.S.C. § 1117, 28 U.S.C. § 1927, and the Court's inherent powers, including

those fees incurred in preparing these papers. Pursuant to § 1927, Gimlet requests this award, including expenses, be made at least in part against Plaintiff's current counsel, the law firm of Balestriere Fariello.

Respectfully submitted,

WOLF, GREENFIELD & SACKS, P.C.

Dated: August 5, 2021

 /s/  John L. Strand
John L. Strand (admitted *pro hac vice*)
Bryan S. Conley (admitted *pro hac vice*)
Amanda B. Slade (admitted *pro hac vice*)
600 Atlantic Avenue
Boston, MA 02210
Telephone: (617) 646-8000
john.strand@wolfgreenfield.com
bryan.conley@wolfgreenfield.com
amanda.slade@wolfgreenfield.com

*Attorneys for Defendant Gimlet Media LLC*
*(f/k/a Gimlet Media, Inc.)*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on August 5, 2021, I caused to be served Gimlet's MEMORANDUM OF LAW IN SUPPORT OF THE REASONABLENESS OF ITS ATTORNEYS' FEES and all related papers on counsel for Plaintiff via ECF.

<u>/s/ *John L. Strand*   </u>
John L. Strand