```
UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------- x
REPLY ALL CORP.,                               :
                                               :     DECISION
                         Plaintiff,            :
                                               :     15-CV-4950 (WFK)(PK)
          -against-                            :
                                               :
                                               :
GIMLET MEDIA, INC.,                            :
                                               :
                         Defendant.            :
------------------------------------------------------------- x
```

**Peggy Kuo, United States Magistrate Judge:**

Reply All Corp. ("Plaintiff") sued Gimlet Media, Inc. ("Defendant") alleging (1) trademark infringement under the Lanham Act, 15 U.S.C. § 1114(1); (2) false designation of origin under the Lanham Act, 15 U.S.C. § 1125(a); and (3) reverse confusion under 15 U.S.C. §§ 1114 and 1125 and New York common law. ("Am. Compl.," Dkt. 71.) The Honorable William F. Kuntz, II granted Defendant's motion for summary judgment and dismissed the case. *See Reply All Corp. v. Gimlet Media, Inc.*, No. 15-CV-4950 (WFK)(PK), 2020 WL 13536220 (E.D.N.Y. Feb. 12, 2020), *aff'd sub nom. Reply All Corp. v. Gimlet Media, LLC*, 843 F. App'x 392 (2d Cir. 2021). The Court also granted Defendant's motion to recover attorneys' fees and costs from Plaintiff. *Reply All Corp. v. Gimlet Media, Inc.*, No. 15-CV-4950 (WFK)(PK), 2021 WL 1291103, at *4 (E.D.N.Y. Apr. 5, 2021).

The case has been referred to me for a calculation of the reasonableness and amount of attorneys' fees due to Defendant pursuant to 15 U.S.C. § 1117 and 28 U.S.C. § 1927. *Reply All Corp.* 2021 WL 1291103, at *4. For the reasons stated below, Defendant is awarded $1,071,981.00 in fees allocated between Plaintiff and Plaintiff's counsel, and $13,585 in costs.

## BACKGROUND

In its decision granting Defendant's motion to recover attorneys' fees and costs, the Court held that this was an "exceptional case" warranting an award of attorneys' fees under Section 35(a) of

1

the Lanham Act, 15 U.S.C. § 1117. *Reply All Corp.* 2021 WL 1291103, at *3. The Court found that "Plaintiff's underlying trademark claims were frivolous and objectively unreasonable," noting that from the outset of the litigation, Plaintiff "had a fatally weak claim with no hope for success." *Id.* at *2. The Court found that "Plaintiff used unreasonable litigation tactics that needlessly expanded the proceedings." *Id.* at 3. Moreover, the Court found that "Plaintiff advanced multiple baseless damages theories in bad faith with the sole aim of extracting a settlement." *Id.* Accordingly, the Court stated that "an award of reasonable attorneys' fees and costs is necessary to compensate Gimlet Media for the resources expended in defending this action and to deter Plaintiff and others from pursuing similarly frivolous claims going forward." *Id.* at *3.

In addition, the Court noted that "[f]or similar reasons" as for Plaintiff, "Plaintiff's counsel proceeded in bad faith by bringing objectively unreasonable and frivolous claims . . . and by attempting to extort a nuisance settlement from Defendant by advancing unsubstantiated and legally incognizable damages theories." *Reply All Corp.*, 2021 WL 1291103, at *4. Although these tactics did not upset the proceedings, the Court found that it was appropriate to award attorneys' fees to Defendant from Plaintiff's counsel because they "knew of their claim's futility yet continued to impose costs on Defendant under increasingly fanciful legal theories." *Id.* Thus, the Court held that "Defendant is owed attorney's fees from Plaintiff's counsel for vexatious litigation under 28 U.S.C. § 1927." *Id.*

On May 11, 2021, Plaintiff filed a letter notifying the Court that "[n]either Reply All Corp. nor its counsel intends to move for reconsideration" of the Court's Decision and Order on Defendant's motion for attorneys' fees. (Dkt. 203.)

On June 15, 2021, the parties filed a joint letter seeking guidance on which issues to address in their briefing. (Dkt. 206.) On June 22, 2021, the Court set a briefing schedule for the parties to address the reasonableness and the amount of fees due. (Minute Entry dated June 22, 2021.)

Defendant filed a memorandum in support of the reasonableness of its requested attorneys' fees ("Def. Mem. of Law," Dkt. 210), and Plaintiff and Plaintiff's counsel, Balestriere PLLC (d/b/a Balestriere Fariello) ("Plaintiff's Counsel" or "the Firm"), filed their oppositions ("Pl. Mem. of Law," Dkt. 215; "Firm Mem. of Law," Dkt. 226). Defendant filed a reply ("Def. Reply," Dkt. 218), and the Firm was permitted to file a sur-reply ("Firm's Sur-Reply," Dkt. 220).[1]

## **DISCUSSION**

### I.  **Attorneys' Fees**

Defendant seeks an award of attorneys' fees for the work done by its counsel, Wolf, Greenfield & Sacks, P.C. ("Wolf Greenfield" or "Defendant's Counsel"), in the amount of $1,575,819.00. (Def. Mem. of Law at 2.)

"[T]he lodestar method—the product of a reasonable hourly rate and the reasonable number of hours required by the case—creates a 'presumptively reasonable fee.'" *Millea v. Metro-N. R.R. Co.*, 658 F.3d 154, 166 (2d Cir. 2011) (quoting *Arbor Hill Concerned Citizens Neighborhood Ass'n. v. Cnty. of Albany*, 522 F.3d 182, 183 (2d Cir. 2008)).

#### A. *Reasonable Hourly Rate*

To determine what constitutes a reasonable hourly rate, "courts should generally use the hourly rates employed in the district in which the reviewing court sits." *Simmons v. N.Y.C. Transit Auth.*, 575 F.3d 170, 174 (2d Cir. 2009) (internal quotation marks and citations omitted). However, courts "may apply an out-of-district rate" if "in calculating the presumptively reasonable fee, it is clear that a reasonable, paying client would have paid those higher rates." *Id.* (cleaned up).

"[W]hen faced with a request for an award of higher out-of-district rates, a district court must first apply a presumption in favor of application of the forum rule." *Simmons*, 575 F.3d at 175. To overcome that presumption, "a litigant must persuasively establish that a reasonable client would have

---

[1] The Court permitted some of the underlying billing records to be filed under seal.

3

selected out-of-district counsel because doing so would likely (not just possibly) produce a substantially better net result." *Id.* In determining whether a litigant has met that burden, courts consider "experience-based, objective factors" such as if "local counsel possessing requisite experience were unwilling or unable to take the case," or if "in a case requiring special expertise, that no in-district counsel possessed such expertise." *Id.* at 175-76 (citation omitted). "A litigant cannot overcome the presumption through mere proximity of the districts, nor can a litigant overcome the presumption by relying on the prestige or 'brand name' of her selected counsel." *Id.* at 176.

Defendant requests reimbursement for work done at an hourly rate of $835 for Wolf Greenfield's experienced shareholders, $530 for senior associates, and $305 for junior associates.[2] (Def. Mem. of Law at 6.) It urges the Court to approve these rates as consistent with those prevailing in the District of Massachusetts and the Southern District of New York, where Wolf Greenfield's offices are located, rather than applying the rates commonly applied in the Eastern District of New York.[3] (Def. Mem. of Law at 6, 9-10.) Defendant asserts that out-of-district rates are appropriate because Wolf Greenfield has special expertise in intellectual property law and "has a renowned litigation team." (Declaration of John L. Strand ("Strand Decl.") ¶ 3, Dkt. 209-2; Def. Mem. of Law at 3, 6, 14.) Defendant claims that Wolf Greenfield has been ranked as "among the top five intellectual property law boutique firms headquartered on the East Coast and top ten in the country," and that Defendant's success "might not have been possible but-for Wolf Greenfield's trademark litigation

---

[2] In its Memorandum of Law, Defendant does not request an hourly rate for work done by its paralegals. (*See generally* Def. Mem. of Law.) However, in its Billing Rates and Hours, Defendant lists hourly rates for its paralegals ranging from $30 to $395. (*See* Ex. 1 to Strand Decl. ("Billing Rates and Hours") at 2-4 (ECF pagination), Dkt. 210-1.)

[3] Defendant contends that "Wolf Greenfield's billing rates are appropriate as they are well within the other rates this Court has deemed reasonable." (Def. Mem. of Law at 5.) However, neither of the cases Defendant references from this district awarded hourly rates near those Defendant requests for its partners and senior associates. (*See id.* at 6 (citing *J.T. Kalmar GmbH v. KLS Lighting Co.*, No. 17-CV-7505 (BMC), 2019 WL 3780091, at *3 (E.D.N.Y. Aug 12, 2019) (finding reasonable "rates ranging from $650/hour for an experienced partner down to $330 for a junior associate" in intellectual property case); *Mun. Credit Union v. Queens Auto Mall, Inc.*, 126 F. Supp. 3d 290, 300 (E.D.N.Y. 2015) (finding hourly rates of $500 per hour for lead counsel and $400 per hour for associate counsel to be reasonable)).)

expertise." (Strand Decl. ¶¶ 4, 20; Ex. 2 to Def. Mem of Law, Dkt. 209-4; Def. Mem. of Law at 4, 11.)

Despite the drawn-out nature of the proceedings, I find that this lawsuit was not so complex that it required the special expertise of a nationally renowned law firm. *See, e.g.*, *Mitchell Group USA LLC, et al. v. Udeh, et al.*, No. 14-CV-5745 (DLI)(JO), 2017 WL 9487193, at *10 (E.D.N.Y. Mar. 8, 2017) (denying awarding out-of-district rates where "although the defendants' conduct needlessly prolonged the proceedings. . . it did not render the case particularly complex"); *U.S. ex rel. Doe v. Acupath Laboratories, Inc.*, No. 10-CV-4819 (LDX), 2015 WL 1293019, at *10 (E.D.N.Y. Mar. 19, 2015) ("However, this case is not so unusual or complex as to warrant applying what amounts to higher out-of-district rates").

Defendant also argues that its decision to hire out-of-district counsel was reasonable given that there is a "lack of top intellectual property firms within the Eastern District." (Def. Mem. of Law at 7.)  Defendant provides no support for this doubtful contention, but even if it were true, Defendant fails to make a "particularized showing that in-district counsel would produce a substantially inferior result." *Gray v. Toyota Motor Sales, U.S.A., Inc.*, No. 10-CV-3081 (JS)(ETB), 2013 WL 3766530, at *4 (E.D.N.Y. July 16, 2013).

While Defendant notes that its prevailing on its motions for summary judgment and attorneys' fees "*might* not have been possible but-for Wolf Greenfield's trademark litigation expertise and significant efforts throughout the case" (Def. Mem. of Law at 11) (emphasis added), it does not establish that selecting out-of-district counsel "would *likely (not just possibly)* produce a substantially better net result." *See Simmons*, 575 F.3d at 175 (emphasis added).

 Indeed, Defendant makes no showing that counsel competent in intellectual property law, but lacking Wolf Greenfield's top-tier reputation, would have achieved an outcome that was substantially inferior to the one obtained here. *See Simmons*, 575 F.3d at 177 ("While [plaintiff] cannot

5

be faulted for wanting to retain counsel with the best possible reputation, it is not [defendant's] responsibility to compensate for such counsel based on higher out-of-district rates where [plaintiff] has not shown that they were likely to produce a substantially better result than competent counsel in the Eastern District").

Finally, Defendant argues that it was reasonable to hire Wolf Greenfield because of the "preexisting" and "positive working relationship it had with the firm." (Def. Mem. of Law at 9.) According to Defendant, Wolf Greenfield's familiarity with Gimlet's business workings, trademark portfolio, and the facts underlying Plaintiff's infringement claim" are qualifications that "could not be replicated at any other law firm, let alone a law firm within the Eastern District." (*Id.*) Defendant retained Wolf Greenfield as trademark counsel just over six months before Plaintiff initiated this lawsuit. (*Id.*) This is not the sort of longstanding relationship that would justify the use of out-of-district counsel with higher rates. *C.f. N. Atl. Operating Co. v. Evergreen Distribs. LLC,* No. 13-CV-4974 (ERK)(VMS), 2015 WL 13856995, at *20 (E.D.N.Y. Jan. 5, 2015) (finding reasonable Plaintiffs' decision to hire out-of-district counsel where Plaintiffs had worked with counsel "for over a decade").

The Court does not find that Defendant has overcome the presumption that Eastern District of New York rates apply to this case. "Thus, even though Defendant consented to the higher rates, the Court does not find that the forum rule presumption has been rebutted." *Gray*, 2013 WL 3766530, at *4.

Accordingly, I apply the rates prevalent in the Eastern District of New York of $600 for partners, $400 for senior associates, $300 for junior associates, and $100 for paralegals. *See, e.g., Value Wholesale, Inc. v. KB Ins. Co.*, No. 18-CV-5887 (KAM)(SMG), 2020 WL 6393016, at *5 (E.D.N.Y. Nov. 2, 2020) (finding hourly rates of $600 for partners and $400 for associates reasonable in complex trademark infringement suit) (subsequent history omitted); *Hormel Foods Sales, LLC v. Ship Side Food Service, Inc.*, No. 16-CV-1595 (LDH)(PK), 2018 WL 3202076, at *2 (E.D.N.Y. Mar. 23, 2018) ("The

6

rates for paralegals in the Eastern District range from $60 to $100 an hour"); *c.f. J.T. Kalmar GmbH*, 2019 WL 3780091, at *3 (finding hourly rates of $650 for experienced partner and $330 for junior associate to be higher than the average awarded in intellectual property cases, but awarding them nonetheless due to high quality of work and fact that plaintiff was a foreign client and nonparty discovery was required).

### B. Reasonable Hours Expended

Defendant submitted documentation indicating that Wolf Greenfield spent a total of 3,634.45 hours on this matter from "inception through 06/30/2021." (Billing Rates and Hours at 5 (ECF pagination); *see also* Defendant's Supplemental Submission in Support of the Reasonableness of its Attorneys' Fees, Dkt. 231.)

To determine whether attorneys' hours expended were reasonable, courts consider "whether, at the time the work was performed, a reasonable attorney would have engaged in similar time expenditures." *Grant v. Martinez*, 973 F.2d 96, 99 (2d Cir. 1992). "[T]he district court should exclude excessive, redundant or otherwise unnecessary hours." *Quaratino v. Tiffany & Co.*, 166 F.3d 422, 425 (2d Cir. 1999).

Defendant argues that the time Wolf Greenfield expended was reasonable given the high stakes of the litigation, Plaintiff's attempts to secure a settlement or damages award of as much as $60,000,000 (Def. Mem. of Law at 12-13), and the fact that the litigation lasted nearly six years. (Def. Mem. of Law at 15.) Moreover, Defendant asserts that the time spent on litigation was reasonable given that it does not seek to recover the full amount of fees incurred, as Wolf Greenfield provided Defendant with significant discounts and fee reductions. (Def. Mem. of Law at 16-20.) For example, Wolf Greenfield billed $197,508 in connection with Defendant's fee application but discounted the charge to $95,321. (Strand Decl. ¶ 31; Def. Mem. of Law at 16-17.) Additionally, Defendant does not seek to recover fees related to Wolf Greenfield's work on Plaintiff's appeal of the court's decision

7

on the motion for summary judgment or for attorneys' fees incurred after June 2021. (Def. Mem. of Law at 17.) Defendant also states that beginning in 2021, Wolf Greenfield provided a 15% courtesy discount on all fees and costs. (Def. Mem. of Law at 18; Strand Decl. ¶ 17.) According to Defendant, Wolf Greenfield has provided a discount of "nearly 17% of the requested fee amount." (Def. Mem. of Law at 19.)

Plaintiff contends that the time Defendant's Counsel spent on this case is excessive given that Defendant now asserts that Plaintiff's claims were frivolous. (Pl. Mem. of Law at 9.) Additionally, Plaintiff argues that Defendant should not recoup fees for unsuccessful motions, including its failed cross-motion for sanctions, or for time spent on motions requesting filing enlargements. (Pl. Mem. of Law at 11.) Plaintiff further argues that Wolf Greenfield's time entries include duplicative and unnecessary work, and that because entries are block billed, it is difficult to determine whether time spent on each activity was reasonable. (Pl. Mem. of Law at 13.)

Plaintiff's Counsel argues that, even though the case was not frivolous, in light of Judge Kuntz's finding to the contrary, Defendant's Counsel should have filed a motion to dismiss and spent fewer hours defending the litigation. (Firm Mem. of Law at 1, 13.)

I find that the Court's ultimate conclusion that Plaintiff's lawsuit was frivolous did not render Wolf Greenfield's work unnecessary or excessive. "Frivolous claims require a defending party to expend time and resources," albeit "on needless litigation." *Gollomp v. Spitzer*, 568 F.3d 355, 372 (2d Cir. 2009).

Moreover, I decline to reduce Wolf Greenfield's hours for time spent on its unsuccessful cross-motion for sanctions. "Not every loss suffered over the course of a lengthy litigation is cause for a reduction in attorneys' fees." *Caltenco v. G.H. Food Inc.*, No. 16-CV-1705 (VMS), 2021 WL 4481205, at *9 (E.D.N.Y. Sept. 30, 2021) (cleaned up). Rather, "courts in this district routinely award attorneys' fees incurred in pursuing unsuccessful motions upon a finding that the motion was not

8

frivolous." *Li Rong Gao v. Perfect Team Corp.*, No. 10-CV-1637 (ENV)(CLP), 2017 WL 9481011, at *10 (E.D.N.Y. Jan. 11, 2017). Although Defendant's cross-motion for sanctions was denied, it was filed collectively with its cross-motion to compel and its opposition to Plaintiff's motion to compel. (*See* Dkt. 35.) Defendant's cross-motion to compel was partially granted, and there is no indication that the request for sanctions was frivolous. (Order dated Aug. 26, 2016.)

I do find, however, that Wolf Greenfield's use of block billing makes it difficult to determine whether the time devoted to individual tasks within entries billed over a large number of hours is reasonable. *See Hindman LLC v. Mihaly*, No. 21 MISC. 452 (PAE), 2022 WL 19752, at *4 (S.D.N.Y. Jan. 3, 2022) ("'[B]lock billing is most problematic where large amounts of time (*e.g.*, five hours or more) are block billed,' because 'the limited transparency afforded by block billing meaningfully clouds a reviewer's ability to determine the projects on which significant legal hours were spent'") (citation omitted). Several of Wolf Greenfield's entries block bill for over six hours of work. For example, on August 8, 2016, Associate Stephanie G. Stella billed 7.4 hours for tasks including "review correspondence from client; office conference regarding strategy; respond to client; research regarding profit claim; deposition research and preparation." (Time Sheets at 44 (ECF pagination).) On August 19, 2016, Stella block billed 8.2 hours (Time Sheets at 45 (ECF pagination)), on August 23, 2016 Stella block billed 7.2 hours (Time Sheets at 46 (ECF pagination)), and on August 24, 2016, Stella block billed 6.3 hours (Time Sheets at 46 (ECF pagination)).

In some instances, block billing makes it difficult for the Court to determine whether some tasks within an entry should have been performed by a staff member at a different level. For example, on April 21, 2016, Stella block billed seven hours for tasks including "confirm deposition location, update notices, prepare letter to Plaintiff requesting documents and supplemental discovery, finalize deposition notices, and prepare cover letter to plaintiff serving the same." (Time Sheets at 32 (ECF pagination).) The above-mentioned August 23, 2016 entry includes "review correspondence from

9

Plaintiff's counsel; draft reply/surreply and declaration and prepare exhibits." (Time Sheets at 46 (ECF pagination).) While some of these tasks are appropriate for an associate to perform, others, like preparing exhibits and an accompanying cover letter, would have been more suitable for a paralegal. *See Hindman*, 2022 WL 19752, at *4.

"Across-the-board percentage cuts are routinely employed by courts to remedy such block billing." *Green v. City of New York*, No. 05-CV-429 (DLI)(ETB), 2009 WL 3088419, at *6 (E.D.N.Y. Feb. 13, 2009) (citations omitted). Rather than parse through the numerous block-billed entries, I reduce the compensable hours in Defendant's fee application by 15% to find a total of 3,089.28 reasonable hours. *See, e.g.*, *TADCO Constr. Corp. v. Dormitory Auth. of New York*, No. 08-CV-73 (KAM)(MDG), 2016 WL 11669712, at *5 (E.D.N.Y. Dec. 12, 2016) (applying 15 percent reduction because of block billing).

### C. Reasonable Fee

Defendant has set forth the proportion of its total hours billed by its partners (20%), senior associates (9%), junior associates (60%), and paralegals (11%). (Billing Rates and Hours at 5 (ECF pagination); Def. Mem. of Law at 16). Applying these percentages to the number of total reasonable hours (3,089.28), I calculate the reasonable hours worked by partners to be 617.86, by senior associates to be 278.03, by junior associates to be 1853.57, and by paralegals to be 339.82. Multiplying these hours by the corresponding reasonable rates results in fees of $370,716.00 for partners, $111,212.00 for senior associates, $556,071.00 for junior associates, and $33,982.00 for paralegals, for a total of $1,071,981.00.

## II. Costs

Defendant requests $13,585.00 in taxable costs to cover transcript fees. (Def. Mem. of Law at 17-18.) It does not seek to recover its total costs which it states include an additional $125,618.00 incurred over the course of the litigation. (Def. Mem. of Law at 17-18.)

10

Plaintiff's Counsel does not challenge Defendant's request for these costs. Plaintiff argues only that expert witness fees are not recoverable under the Lanham Act. (Pl. Mem. at 16.) However, Defendant has not requested reimbursement for expert fees. (Def. Reply Mem. at 8.)

I find that the costs requested by Defendant are reasonable.

### III. Allocation of Fees Between Plaintiff and Plaintiff's Counsel

In the Decision and Order granting Defendant's motion for attorneys' fees and costs, the Court found that both Plaintiff and Plaintiff's Counsel are liable for a portion of Defendant's attorneys' fees. *Reply All Corp.*, 2021 WL 1291103, at *2-4.

To determine the proper allocation of fees between Plaintiff and Plaintiff's Counsel, courts consider the relative culpability of the parties and may set a percentage to apportion the fees based on culpability. *See Koster v. Perales*, 903 F.2d 131, 139 (2d Cir. 1990). Alternatively, the court may find the parties jointly and severally liable for a fee award. *See Viola Sportwear, Inc. v. Mimun*, 574 F. Supp. 619, 621 (E.D.N.Y. 1983).

Defendant requests that the Court apportion its fees so that 1) Plaintiff is exclusively responsible for attorneys' fees incurred from August 24, 2015 to May 25, 2017 when it was represented by prior counsel; 2) Plaintiff's Counsel is exclusively responsible for attorneys' fees related to the threatened state court action; and 3) Plaintiff and Plaintiff's Counsel are jointly and severally liable for the remaining fees incurred from May 25, 2017 onward. (Def. Mem. of Law at 20.)

There is no dispute that Plaintiff's Counsel is not liable for fees that Defendant accrued before the Firm began representing Plaintiff. (*See* Pl. Mem. of Law at 16 n.7.) Therefore, Plaintiff is exclusively responsible for attorneys' fees that were incurred while it was represented by prior counsel from August 24, 2015 to May 25, 2017. (Pl. Mem. of Law at 2.) The pre-May 25, 2017 fees represent 15.76% of the total fees. Applying that proportionately to the total reasonable fees results in the amount of $168,944.21.

11

Plaintiff and the Firm each assert that the other should be responsible for paying Defendant's remaining fees.

Plaintiff argues that the remaining fees should be attributed to the Firm because "[t]he overwhelming majority of the fees in this litigation were incurred after Balestriere Fariello appeared in the case, and after this case was nearly complete." (Pl. Mem. of Law at 17.) It argues that the additional legal work that Defendant had to do was largely the result of "lawyer-driven decisions" and that the Firm had access to information and documents that Plaintiff was not privy to, making Plaintiff reliant on the Firm's advice on how to proceed and the strength of its case. (Pl. Mem. of Law at 17-18.) Plaintiff further asserts that the Firm threatened to bring a new lawsuit against Defendant's parent corporation, Spotify, counseled Plaintiff to manufacture a shareholder derivative lawsuit, and amended the complaint to add new claims and theories. It argues that much of this behavior was driven by the Firm's fee arrangement with Plaintiff, which entitled the Firm to greater fees if a new suit was filed and tried. (Pl. Mem. of Law at 19.) Finally, Plaintiff asserts that much of the conduct that the Court found frivolous was the result of the Firm's advice. (Pl. Mem. of Law at 19.)

Plaintiff's Counsel argues that all the fees incurred while it represented Plaintiff should be attributed to Plaintiff because Plaintiff was "the driving force behind the litigation." (Firm Mem. of Law at 18.) According to the Firm, "new theories and amendments late in the litigation," such as "the idea of asserting derivative claims in a potential new lawsuit against Spotify," were often conceived or signed off on by Plaintiff. (Sur-Reply Decl. of John G. Balestriere ¶¶ 9-10, Ex. A to Firm's Sur Reply, Dkt. 220-1.) The Firm asserts that it properly advised Plaintiff throughout the case and encouraged Plaintiff to settle to avoid the risks of trial. (Firm Mem. of Law at 15, 19.)

This case was fundamentally flawed at its inception and then needlessly prolonged over the course of multiple years. The Court has already found that the Firm bears responsibility for at least some of the actual litigation strategy by proceeding in bad faith and engaging in vexatious litigation.

12

Despite the extensive finger-pointing and mutual accusations, I am unable to determine the respective degrees of culpability of Plaintiff and the Firm for Defendant's fees incurred during the Firm's representation of Plaintiff. On the record before me, it is also not possible to correlate the amount of work done by Defendant's Counsel to the decisions made by Plaintiff or Plaintiff's Counsel. To revisit each phase of this lengthy litigation and make credibility findings as between Plaintiff and Plaintiff's Counsel would necessitate a mini-trial.

Rather than undertake the exercise of examining nesting dolls of litigation, I adopt the approach of other courts, which have held counsel and client "jointly and severally liable, declining to apportion liability between them and allowing them to settle the issue among themselves." *Alcon Vision, LLC v. Lens.com, Inc.*, No. 18-CV-407 (NG)(RLM), 2022 WL 17685501 at *9 n.3 (E.D.N.Y. July 7, 2022) (citations omitted).

Accordingly, I find that (1) Plaintiff is exclusively responsible for attorneys' fees in the amount of $168,944.21, and (2) Plaintiff and the Firm are joint and severally liable for the remaining attorneys' fees in the amount of $903,036.79.

## CONCLUSION

Based on the foregoing, Defendant is awarded $1,071,981.00 in attorney's fees, and $13,585.00 in costs, for a total award of $1,085,566.00. Plaintiff solely is responsible for attorneys' fees in the amount of $168,944.21, while both Plaintiff and the Firm are joint and severally liable for the remaining attorneys' fees in the amount of $903,036.79.

Dated: Brooklyn, New York
          March 25, 2024

*Peggy Kuo*
PEGGY KUO
United States Magistrate Judge